UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
CHARLES KUX-KARDOS, individually
and on behalf of all others similarly situated,

                    Plaintiff,

                    -against-

VIMPELCOM, LTD., JEAN-YVES
CHARLIER, JO LUNDER, ALEXANDER
IZOSIMOV, ANDREW DAVIES, and
CORNELIS HENDRIK VAN DALEN,

                    Defendants.
------------------------------------------------------------- x
WESTWAY ALLIANCE CORP.,
individually and on behalf of all others
similarly situated,

                    Plaintiff,

                  -against-

VIMPELCOM, LTD., JEAN-YVES
CHARLIER, JO LUNDER, ALEXANDER
IZOSIMOV, ANDREW DAVIES, and
CORNELIS HENDRIK VAN DALEN,

                    Defendants.
------------------------------------------------------------- x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 4/27/16

1:15-CV-08672 (ALC)

1:15-CV-09492 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

     Before the court are two securities fraud class actions against VimpelCom, Ltd. ("VimpelCom") and certain of its officers and directors. In both cases, plaintiffs allege that Defendants made false and/or misleading statements and failed to disclose material adverse facts about VimpelCom's business, operations, and prospects, and that the disclosure of these acts and omissions caused a precipitous decline in stock prices.

1

Currently pending are motions for consolidation, appointment of lead plaintiff, and approval of class counsel. Plaintiff Westway Alliance Corp. ("Westway"), putative class members Boris Lvov and Richard McColloch ("Lvov and McColloch"), putative class members Vimal K. Kocher and Dhirendra Prasad Sangal ("Kocher and Sangal"), and putative class members Igor Melnikov and Max Nussbaumer ("Melnikov and Nussbaumer") have moved to consolidate the two actions currently pending before the Court. (ECF Nos. 11, 12, 15, 18.)[1] In addition, Westway, as well as Lvov and McColloch, has moved to be appointed lead plaintiff.[2,3] (ECF Nos. 8, 18.) For the reasons stated below, the Court consolidates the actions, appoints Westway as lead plaintiffs, and approves Westway's choice of counsel.

I. **Consolidation**

Plaintiff Westway and various putative class members move to consolidate the two cases presently before the Court, *Kux-Kardos v. VimpelCom, Ltd. Et al*, No. 15 Civ. 8672, and *Westway Alliance Corp. v. VimpelCom, Ltd., et al*, No. 15 Civ. 9492. No party objects to consolidation.

Consolidation is proper "[i]f actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). "Under Rule 42 and the Private Securities Litigation Reform Act (the 'PSLRA'), actions need not be 'identical' to allow for consolidation. *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 394 (S.D.N.Y. 2014) (quoting *Pinkowitz v. Elan Corp., PLC*, Nos. 02 Civ. 865 et al., 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002)).

---

[1] Citations to "ECF" refer to the electronic docket of *Kux-Kardos* v. *VimpelCom, Ltd. et al*, No. 15 Civ. 8672.
[2] The Lvov and McColloch group initially contained a third member, Philip Tohme, but he has since withdrawn; Lvov and McColloch still move to be appointed lead plaintiffs. (ECF No. 29.)
[3] Melnikov and Nussbaumer withdrew their motion for appointment as lead plaintiff. (ECF No. 20.) Similarly, Kocher and Sangal filed a motion of non-opposition in light of other movants' larger financial losses. (ECF No. 22.) Both groups indicated that they believed Lvov, McColloch, and Tohme to have suffered the largest financial losses. These filings preceded Tohme's withdrawal, but neither group has filed any additional material since Tohme's withdrawal.

The court should "look[] to the particular facts of cases to determine if the anticipated benefits of consolidated actions, such as considerations of judicial economy and unnecessary costs to the parties, outweigh potential prejudice to the parties." *Id.* (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007)). The Court enjoys "broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990).

Consolidation is appropriate here because the *Kux-Kardos* and *Westway* actions involve substantially identical questions of law and fact. Both suits are putative class actions, raising claims against the same defendants pursuant to the same provisions of the Securities Exchange Act. *See* Kux-Kardos Compl. ¶¶ 84-94, 95-100; Westway Compl. ¶¶ 85-88, 89-90. Both are actions brought by investors who purchased or otherwise acquired VimpelCom securities and were damaged by the revelation of alleged corrective disclosures. *See* Kux-Kardos Compl. ¶¶ 1, 30, 75; Westway Compl. ¶¶ 1, 30, 78. Indeed, the recitations of fact in the two complaints are virtually identical. *See, e.g.* Kux-Kardos Compl. ¶¶ 54-74; Westway Compl. ¶¶ 59-78.

While the complaints do allege different start dates for the class period, *compare* Kux-Kardos Compl. ¶ 30 *with* Westway Compl. ¶ 30, "differences in . . . the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan*, 240 F.R.D. at 91 (citation omitted). Here, the difference in start dates results from the parties' reliance upon different financial statements in their pleadings. However, all plaintiffs rely on a common pattern of factual allegations and share a common legal question, and thus, consolidation is proper. *See id.* (collecting cases where courts consolidated securities class actions despite varying class periods). "[T]he filing of a consolidated complaint, and the determination of class certification each offer opportunities to resolve remaining issues

3

concerning the different class periods." *Id*. On balance, considerations of judicial economy justify consolidation.

## II. Appointing Lead Plaintiffs

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court is to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the one who: (1) "filed the complaint or made a motion in response to a notice," (2) "has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of [Federal Rule of Civil Procedure] Rule 23." *Id*. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

The presumption of the most adequate plaintiff may only be rebutted by proof that the purportedly most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id*. § 78u-4(a)(3)(B)(iii)(II)(aa), (bb).

### a. Westway's Financial Interest

Courts in this district consider the following factors to determine which party had the largest financial interest: "(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period . . . ; (3) the net shares purchased during the class period . . .; (3) the net funds expended during the class period . . . ; and ( 4) the approximate losses suffered." *Peters v. Jinkosolar Holding Co., Ltd.,* No. 11 Civ. 7133 (JPO), 2012 WL 946875, at *5. (S.D.N.Y. March 19, 2012) (quoting *Kaplan v. Gelfond,* 240 F.R.D. 88, 93 (S.D.N.Y. 2007)). "It is well settled that '[f]inancial loss, the last factor, is the most important

element of the test.'" *Id.* (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.,* 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008)). When evaluating financial loss, "courts must consider only those losses that will actually be *recoverable* in the class action." *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617 (S.D.N.Y. 2015) (citing *In re Comverse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825 (NGG), 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007)). In securities fraud cases, plaintiffs must "prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused [his] economic loss" in order to recover. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Thus, in evaluating financial loss, courts must consider only those losses proximately caused by the defendant's misrepresentations or other fraudulent conduct.

Here, Westway alleges that it has the largest financial interest in the litigation because it suffered losses of over $679,339. Lvov and McColloch do not contend that they suffer losses above that amount but they argue that Westway in fact has no financial interest in the litigation because it suffered no *recoverable* losses.

"Where, as here, plaintiffs endeavor to establish loss causation based on a corrective disclosure, losses that may have incurred before a company's misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in the litigation." *Topping*, 95 F. Supp. at 617 (quoting *Comverse*, 2007 WL 680779, at *4) (internal alterations and quotation marks omitted). "Therefore, when calculating movants' financial interests on a lead plaintiff motion, courts should not include losses resulting from 'in-and-out' transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public." *Id.* (internal alterations and quotation marks omitted). However, a plaintiff's theory of "loss causation may be premised

5

on partial revelations that do not uncover the complete extent of the falsity of specific prior statements" where the partial disclosure "somehow reveals to the market that a defendant's prior statements were not entirely true." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283 (S.D.N.Y. 2008).

Westway does not dispute that it sold its shares prior to the alleged corrective disclosures made on August 13, 2015, and November 3, 2015. *See* Westway Compl. ¶¶ 74-78; Westway Reply, ECF No. 25, 5 n. 1. But it argues that VimpelCom made a series of partial disclosures, two of which preceded its March 6, 2015, sale of its shares:

> (1) "On March 12, 2014, the Company announced that it was facing investigations by both the SEC and Dutch authorities related to its operations in Uzbekistan."
> (2) "On March 18, 2014, the Company reported that the Company was the focus of an investigation by the U.S. Department of Justice ('DOJ') related to the Company's operations in Uzbekistan."

Kux-Kardos Compl. ¶¶ 5-6, 54-55; Westway Compl. ¶¶ 5-6, 59. The Court agrees that these disclosures "somehow reveal[ed] to the market that a defendant's prior statements were not entirely true." *Take-Two*, 551 F. Supp. at 283. This is because, as various courts have found, "the announcement of . . . investigations may qualify as partial disclosures for purposes of loss causation." *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 388 (E.D.N.Y. 2013); *see also Take-Two*, 551 F. Supp. 2d at 288 (collecting cases finding the same).

Based on the allegations in both complaints that VimpelCom publicly announced in March 2014 the existence of investigations into the specific course of conduct at issue here, Westway has adequately established for present purposes that it suffered the largest financial loss and that its loss is recoverable under the causation principle described in *Dura*. *See Juliar v. Sunopta Inc.*, No. 08 CIV. 1070 (PAC), 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) ("Courts in this District have found that where a putative lead plaintiff sold all its shares after a

partial disclosure of misconduct by the defendant but before the final disclosure that led to the lawsuit, that putative lead plaintiff does not face the unique defense of having to show loss causation to the extent that it cannot serve as lead plaintiff."); *see also Weiss v. Friedman, Billings, Ramsey Group, Inc.,* 2006 WL 197036, at *5 (S.D.N.Y. Jan. 25, 2006).

### b. Westway Is the Presumptive Lead Plaintiff

Having established that Westway has the largest financial interest, the Court must determine whether Westway "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). When moving for appointment as lead plaintiff, "the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met." *Janbay v. Canadian Solar, Inc.,* 272 F.R.D. 112, 120 (S.D.N.Y. 2010).

The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.,* 960 F.2d 285, 291 (2d Cir. 1992). Here, Westway, like other putative class members, claims to have purchased VimpelCom stock at prices artificially inflated by VimpelCom's materially false and misleading statements and suffered financial loss as a result. Its claims "arise[] from the same course of events" as those of other class members and Westway will "make[] similar legal arguments to prove the defendant[s'] liability" under the Securities Exchange Act, and thus, it satisfies the typicality requirement. *Id.*

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D.

7

126, 131 (S.D.N.Y. 2011) (citation omitted). Westway has retained Gainey McKenna & Egleston as its lead counsel. This firm appears to be competent and experienced counsel, based on its past experience in securities fraud class actions. *See* Exh. D, McKenna Decl., ECF No. 10-4 (describing securities fraud class actions in which the firm served as lead counsel or co-lead counsel). Further, Westway's "significant financial interest should ensure vigorous advocacy on behalf of the class." *Foley*, 272 F.R.D. at 131. Finally, no party argues that there is a conflict between Westway and the members of the class. Therefore, Westway makes the requisite preliminary showing that the adequacy and typicality requirements have been met, and it is the presumptive lead plaintiff.

### c. Presumption of Adequacy is Not Rebutted

The presumption in favor of Westway may only be rebutted by "proof by a member of the purported class that the presumptive lead plaintiff will not fairly or adequately protect the interests of the class or is subject to unique defenses rendering it incapable of adequately representing the class." Lvov and McColloch argue, "Westway's certification raises concern about whether Westway is properly before the Court and under what authority," Lvov and McColloch Opp., ECF No. 21, 6, and thus, that Westway is subject to a unique defense.

The PLSRA requires that each plaintiff seeking to serve as a representative party provide a sworn certification that is personally signed by that plaintiff. 15 U.S.C. § 78u-4(a)(2)(A). The certification submitted by Westway was signed by "Maxim Galkin, Attorney." *See* Westway Compl. Lvov and McColloch argue that there is no statement evidencing Galkin's authority to bind Westway, and therefore, they cannot assess whether "Westway suffers from a disabling unique defense as it failed to timely make the representations required by the PSLRA." Lvov and

McColloch Opp., 6-7 (citing *Steamfitters v. Local 449 Pension Fund v. Central European Distribution Corp.*, 2012 WL 3638629, at *12 (D.N.J. Aug. 22 2012)).

It is true that "[s]ome courts have rejected lead plaintiff applications on the ground that the relevant PSLRA certification lacks any indication that its signatory had the requisite authority." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538 (S.D.N.Y. 2015) (citing *Steamfitters*, 2012 WL 3638629, at *12 (certification did not specific that it was executed on behalf of signatory's subsidiaries); *In re Enzymotec Ltd. Sec. Litig.*, No. 14 Civ. 5556, 2015 WL 918535, at *2–4 (D.N.J. Mar. 3, 2015) (lead plaintiff presumption rebutted where purported institutional plaintiff's certification provided no indication that its signer was authorized to sign on the company's behalf)). In these cases, however, "there was *no* indication that the certification was signed on behalf of the movant." *Khunt*, 102 F. Supp. at 538 (emphasis in original). That is not the case here: Galkin submitted a declaration explaining that he is the general manager of Westway, and that he has full power and investment authority to bring this suit on its behalf. Galkin Decl., ECF No. 25-1. As have other courts, this Court finds that the "supplemental certification clarifying that the individual signer was acting in his capacity as an agent of the entity was sufficient to remedy any purported deficiencies." *Id.* (describing *Roby v. Ocean Power Techs., Inc.*, No. 14 Civ. 3799 (FLW)(LHG), 2015 WL 1334320, at *8–*9 (D.N.J. Mar. 17, 2015)); *see also id.* (collecting cases where courts found "minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement.").

In sum, Westway filed a complaint in this litigation, has the largest financial interest in the litigation, and otherwise satisfies the adequacy and typicality requirements of Rule 23, making it the presumptive most adequate plaintiff. No other party shows that Westway will not

fairly and adequately protect the interests of the class, or that it is subject to unique defenses. Therefore, the Court appoints Westway as lead plaintiff.

### III. Approval of Counsel

The PSLRA provides that, subject to the approval of the Court, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiffs decision as to counsel." *Topping,* 95 F. Supp. 3d at 623. As discussed above, Westway demonstrates that Gainey McKenna & Egleston, its counsel, is "qualified, experienced, and generally able to conduct the litigation." *Foley,* 272 F.R.D. at 131. Therefore, the Court approves Gainey McKenna & Egleston as lead counsel.

### CONCLUSION

For the foregoing reasons, the Court grants the motions to consolidate *Kux-Kardos v. VimpelCom, Ltd. et al*, No. 15 Civ. 8672, and *Westway Alliance Corp. v. VimpelCom, Ltd., et al*, No. 15 Civ. 9492. The Court also grants Westway's motion for appointment as lead plaintiff and approves Gainey McKenna & Egleston as lead counsel. The remaining motions are denied. This terminates ECF Nos. 8, 11, 12, 15, 18, and 20. The Court will schedule an initial pretrial conference for the consolidated action by separate order.

**SO ORDERED.**

**Dated:** April 27, 2016
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**