**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| **In re VEON, Ltd. Securities Litigation** |

No.: 1:15-cv-08672 (ALC)

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS WITH PREJUDICE THE CLAIMS**
**AGAINST DEFENDANT ALEXANDER IZOSIMOV**

KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Eric.Bruce@kobrekim.com
Steven.Perlstein@kobrekim.com
Brad.Samuels@kobrekim.com

*Attorneys for Defendant Alexander Izosimov*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................i

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ..................................................................................................................4

    I.    Service of the Complaint More Than Two Years After It Was Filed...................4

    II.    Allegations in the Complaint ...................................................................................5

        A.    The Single Substantive Allegation Against Mr. Izosimov ...........................5

        B.    Control Person Allegations Against the "Individual Defendants" ...............6

    III.    The Court's Memorandum Opinion and Order ...................................................7

ARGUMENT ........................................................................................................................8

    I.    Plaintiff Did Not Timely Serve Mr. Izosimov .....................................................8

    II.    Plaintiff's Claims Are Time-Barred......................................................................12

    III.    Plaintiff Fails To Plead Its Section 10(b) and Rule 10b-5 Claims with Heightened Specificity......................................................................................13

        A.    The Complaint Fails to Allege Any Material Misstatements or Omissions 14

        B.    The Complaint Fails to Plead Scienter as to Mr. Izosimov .........................17

    IV.    The Complaint Fails to State a Section 20(a) Claim Against Mr. Izosimov .......21

    V.    The Court Lacks Personal Jurisdiction Over Mr. Izosimov ...............................22

CONCLUSION...................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                          **Page(s)**

*Ashcroft v. Iqbal,*
   556 U.S. 662, 678  (2009) ........................................................................................... 14

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
   493 F.3d 87 (2d Cir. 2007) ........................................................................................ 14

*Barrett v. PJT Partners Inc.,*
   No. 16-CV-2841-VEC, 2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017) ..................................... 16

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................................. 13

*C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.,*
   419 F. Supp. 2d 419 (S.D.N.Y. 2005) .......................................................................... 8

*Camotex, S.R.L. v. Hunt,*
   741 F. Supp. 1086 (S.D.N.Y. 1990) ............................................................................ 12

*Cioce v. Cty. of Westchester,*
   No. 02-CIV-3604, 2003 WL 21750052 (S.D.N.Y. July 28, 2003) ...................................... 9 n.7

*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.,*
   399 F.3d 651 (6th Cir. 2005) ..................................................................................... 16

*Darden v. DaimlerChrysler N. Am. Holding Corp.,*
   191 F. Supp. 2d 382 (S.D.N.Y. 2002) .......................................................................... 8

*DEF v. ABC,*
   366 F. App'x 250 (2d Cir. 2010) ................................................................................. 9

*DHL Global Forwarding Management Latin America, Inc. v. Pfizer, Inc.,*
   No. 13-cv-8218-KBF, 2014 WL 5169033 (S.D.N.Y. Oct. 14, 2014) ................................... 9

*Dodds v. Cigna Sec., Inc.,*
   12 F.3d 346 (2d Cir. 1993) ........................................................................................ 13

*Dynegy Midstream Servs. v. Trammochem,*
   451 F.3d 89 (2d Cir. 2006) ........................................................................................ 8

*Fait v. Regions Fin. Corp.,*
   655 F.3d 105 (2d Cir. 2011) ....................................................................................... 15

i

*Fogel v. Wal-Mart de Mexico SAB de CV*
    No. 13-CIV-2282-KPF, 2017 WL 751155 (S.D.N.Y. Feb. 27, 2017) ..................................... 13

*Ganino v. Citizens Utils. Co.*,
    228 F.3d 154 (2d Cir. 2000) ......................................................................................... 17

*George v. Prof'l Disposables Int'l, Inc.*,
    221 F. Supp. 3d 428 (S.D.N.Y. 2016) ............................................................................ 10

*Gleason v. McBride*,
    869 F.2d 688 (2d Cir. 1989) ......................................................................................... 12

*Gurfein v. Ameritrade, Inc.*,
    411 F. Supp. 2d 416 (S.D.N.Y. 2006) ............................................................................ 20

*Hemming v. Alfin Fragrances, Inc.*,
    690 F. Supp. 239 (S.D.N.Y. 1988) ................................................................................ 21

*Hutchinson v. Perez*,
    No. 12-CIV-1073-HB, 2012 WL 5451258 (S.D.N.Y. Nov. 8, 2012),
    *amended*, No. 12-CIV-1073-HB, 2013 WL 93171 (S.D.N.Y. Jan. 8, 2013) .......................... 18

*In re Alstom SA*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005) ............................................................................ 21

*In re AstraZeneca Sec. Litig.*,
    559 F. Supp. 2d 453 (S.D.N.Y. 2008), *aff'd sub nom. State Univ. Ret. Sys. of Illinois v.
    Astrazeneca PLC*, 334 F. App'x. 404 (2d Cir. 2009) ............................................... 22, 23

*In re Banco Bradesco S.A. Sec. Litig.*,
    No. 1:16-CV-4155-GHW, 2017 WL 4381407 (S.D.N.Y. Sept. 29, 2017) .............................. 16

*In re Bozel S.A.*,
    549 B.R. 446 (Bankr. S.D.N.Y. 2016),
    *aff'd*, No. 1:16-CV-3739-ALC, 2017 WL 3175606 (S.D.N.Y. July 25, 2017) ...................... 11

*In re Braskem S.A. Sec. Litig.*,
    246 F. Supp. 3d 731 (S.D.N.Y. 2017) ............................................................................ 23

*In re Crysen/Montenay Energy Co.*,
    166 B.R. 546 (S.D.N.Y. 1994) ................................................................................ 11, 12

*In re DDAVP Direct Purchaser Antitrust Litig.*,
    585 F.3d 677 (2d Cir. 2009) ......................................................................................... 20

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015) ...................... 15

ii

*In re MBIA, Inc., Sec. Litig.*,
    700 F. Supp. 2d 566 (S.D.N.Y. 2010)............................................................. 18

*In re Rhodia S.A. Sec. Litig.*,
    531 F. Supp. 2d 527 (S.D.N.Y. 2007)............................................................. 19

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    351 F. Supp. 2d 334 (D. Md. 2004) .......................................................... 23 n.11

*In re Southold Dev. Corp.*,
    148 B.R. 726 (E.D.N.Y. 1992) ....................................................................... 11

*In re UBS Auction Rate Sec. Litig.*,
    No. 08-CV-2967-LMM, 2009 WL 860812 (S.D.N.Y. Mar. 30, 2009) ................... 11

*In re VEON Ltd. Sec. Litig.*,
    No. 15-CV-08672-ALC, 2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017) ........................ passim

*Intesa Sanpaolo, S.p.A. v. Credit Agricole Corp. & Inv. Bank*,
    924 F. Supp. 2d 528 (S.D.N.Y. 2013)............................................................. 12

*Kalin v. Xanboo, Inc*,
    526 F. Supp. 2d 392 (S.D.N.Y. 2007)............................................................. 22

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)........................................................................... 17

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)........................................................................... 22

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
    No. 14-CV-3251-JPO, 2017 WL 4386902 (S.D.N.Y. Sept. 29, 2017)................... 16

*Mentor Ins. Co. (U.K.) v. Brannkasse*,
    996 F.2d 506 (2d Cir. 1993)........................................................................... 10

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)............................................................................. 23

*Montalbano v. Easco Hand Tools, Inc.*,
    766 F.2d 737 (2d Cir. 1985)............................................................................. 9

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*,
    89 F. Supp. 3d 602 (S.D.N.Y. 2015)............................................................. 18

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)............................................................. 17

iii

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
   645 F. Supp. 2d 210 (S.D.N.Y. 2009) ................................................................. 19

*Ret. Sys. v. Mechel OAO*,
   811 F. Supp. 2d 853 (S.D.N.Y. 2011),
   *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012) ........... 19

*Rok v. Identiv, Inc.*,
   No. 15-CV-5775-CRB, 2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ......................... 15

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) .................................................................................. 15

*Ruotolo v. City of New York*,
   514 F.3d 184 (2d Cir. 2008) .................................................................................. 13

*Russo Sec., Inc. v. Ryckman*,
   159 F. App'x 294 (2d Cir. 2005) ............................................................................. 9

*S.E.C. v. Unifund SAL*,
   910 F.2d 1028 (2d Cir. 1990) ............................................................................... 22

*SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*,
   829 F.3d 173, 177 (2d Cir. 2016), *cert denied sub nom.* 137 S. Ct. 2326 (2017) ................... 12

*Tarsavage v. Citic Trust Co.*,
   3 F. Supp. 3d 137 (S.D.N.Y. 2014) ....................................................................... 22

*Teamsters Allied Benefit Funds v. McGraw*,
   No. 09-CIV- 140-PGG, 2010 WL 882883 (S.D.N.Y. Mar. 11, 2010) ..................... 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .............................................................................................. 17

*Three Crown Ltd. P'ship v. Caxton Corp.*,
   817 F. Supp. 1033 (S.D.N.Y. 1993) ...................................................................... 20

*Vantone Grp. Ltd. Liab. Co. v. Yangpu Ngt Indust. Co.*,
   No. 13-cv-7639-LTS-FM, 2016 WL 3926449 (S.D.N.Y. July 15, 2016) ............... 10

**Statutes**

15 U.S.C. § 78aa ........................................................................................................ 23

15 U.S.C. § 78u-4(b)(2) ............................................................................................. 17

28 U.S.C. § 1658(b) .............................................................................................. 12, 13

Private Securities Litigation Reform Act .............................................................. passim

Securities Exchange Act of 1934 ............................................................................passim

**Rules**

Fed. R. Civ. P. 4(f)(3) .................................................................................... 12

Fed. R. Civ. P. 4(m) ................................................................................. passim

Fed. R. Civ. P. 9(b) .................................................................................. passim

Fed. R. Civ. P. 12(b)(2)..................................................................................... 1

Fed. R. Civ. P. 12(b)(5).................................................................................. 1, 8

Fed. R. Civ. P. 12(b)(6)............................................................................... 1, 13

Defendant Alexander Izosimov ("Izosimov") respectfully submits this memorandum of law in support of his motion to dismiss with prejudice the claims against him in the Amended Class Action Complaint (the "Complaint") pursuant to Rules 12(b)(2), 12(b)(5), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure, as well as the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Mr. Izosimov adopts by reference all arguments made by the other Defendants in their motions to dismiss. In order to be efficient with the Court's time, this brief focuses on the arguments that relate solely to Mr. Izosimov.

## PRELIMINARY STATEMENT

Lead Plaintiff Westway Alliance Corp.'s ("Plaintiff") half-hearted attempt to include Mr. Izosimov in this litigation is a failure in both process and substance. Plaintiff has crafted a complaint that is devoid of almost any reference to Mr. Izosimov at all and instead relies almost exclusively on references to the deferred prosecution agreement ("DPA") that VimpelCom[1] entered in 2016 concerning the Company's *own conduct*. Mr. Izosimov was not a party to that agreement, nor was he charged in connection with any of the misconduct that was the subject of the DPA.

Indeed, Plaintiff's factual allegations against Mr. Izosimov are so thin that all Plaintiff could muster are two paragraphs that reference him in the Complaint: one identifying Mr. Izosimov as the former Chief Executive Officer of VimpelCom from October 2003 to June 2011 (¶ 14)[2] and a second stating that he signed a Sarbanes-Oxley Act of 2002 ("SOX") certification included with the Company's 2010 Form 20-F (¶ 108). These two bare allegations against Mr.

---

[1] During this litigation, VimpelCom, Ltd. ("VimpelCom" or the "Company") changed its name to Veon, Ltd. *See* ECF No. 51. Because the Complaint refers to the Company as VimpelCom, it is referenced by that name in this motion as well.

[2] All references to "¶" are to the Amended Complaint, unless otherwise noted. All references to "Ex. _" are to exhibits attached to the Declaration of Steven W. Perlstein, dated February 9, 2018, submitted herewith.

Izosimov fail to establish a violation of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, and certainly fail to state a claim under the heighted pleading standard of the PSLRA. Accordingly, for all of the following reasons, Plaintiff's claims against Mr. Izosimov should be dismissed with prejudice.

*First*, as a threshold matter, Plaintiff failed to timely serve the Complaint on Mr. Izosimov. Plaintiff filed its initial complaint on November 4, 2015, (the "Original Complaint")[3] yet inexplicably failed to properly serve it on Mr. Izosimov for *over two years*, before finally requesting a waiver of service on January 9, 2018 (*see* Ex. A).[4] This delay requires the matter to be dismissed with prejudice and cannot be explained away by good cause. Indeed, there decidedly is no good cause for Plaintiff's neglect in serving Mr. Izosimov. Plaintiff was well aware of how to reach Mr. Izosimov and easily could have done so. Mr. Izosimov's home address is (and was in 2015) available through a simple Google search, and Plaintiff obviously was aware of how to contact Mr. Izosimov, having mailed a letter to his home address on November 6, 2017.

*Second*, Plaintiff's claims are time-barred. As a result of Plaintiff's undue delay in serving Mr. Izosimov, the five-year statute of repose applicable to Exchange Act claims has expired. While the filing of a complaint usually would have suspended the repose period, failure to serve the Complaint, or even show any diligence in attempting to serve Mr. Izosimov, results in the time period continuing to run. As numerous courts have observed, where a plaintiff fails to serve the complaint, it is as if the complaint never had been filed. Plaintiff is not entitled to an unlimited

---

[3] Plaintiff filed the amended Complaint on December 9, 2016. References to the "Complaint" in this motion are to the Amended Complaint. References to the Original Complaint are to the initial complaint filed on November 4, 2015.

[4] On January 12, 2018 Plaintiff and Mr. Izosimov stipulated and agreed that Mr. Izosimov would file and serve a motion to dismiss the Complaint, but that Mr. Izosimov, nonetheless, preserves all objections to the lawsuit, including objections to the timeliness and effectiveness of service up to the date of the stipulation and the relevant statute of limitations or repose. (*See* Ex. A).

period for service, nor is Plaintiff entitled to toll the repose period indefinitely while it sits on its hands.  Here, the only representation Mr. Izosimov is alleged to have made was on June 30, 2011:  Plaintiff alleges that Mr. Izosimov signed a SOX certification on behalf of VimpelCom on June 30, 2011, which also was the day he resigned from the Company.  Notwithstanding that allegation, service was not completed until January 2018, a gap of more than six years.

*Third*, Plaintiff failed to plead an actionable misrepresentation.  Plaintiff's sole substantive allegation against Mr. Izosimov is that he signed a SOX certification in conjunction with the Company's 2010 annual report.  Plaintiff does not allege in the Complaint that Mr. Izosimov's SOX certification was false or misleading, and it does not identify any actionable misstatement in the certification.  Nor could it.  Mr. Izosimov certified only that *to his knowledge*, the 2010 Form 20-F did not contain any misstatements and that he and the other certifying officers had designed disclosure controls and evaluated their effectiveness.  Plaintiff does not plead any fact or make any claim to the contrary.

*Fourth*, Plaintiff fails to plead any facts to establish a strong inference of scienter.  The Complaint makes no showing that Mr. Izosimov had a motive to commit fraud, nor that any action he took was the result of conscious misbehavior or recklessness.  The skimpy allegation that Mr. Izosimov simply signed a SOX certificate, without significant additional specific allegations as to Mr. Izosimov's own conduct, fail to establish a strong inference of scienter.

*Fifth*, Plaintiff's lone two allegations against Mr. Izosimov also fail to plead a claim for "control person" liability under § 20(a) of the Exchange Act.  The Complaint fails to allege Mr. Izosimov controlled VimpelCom or had any culpable participation in or knowledge of the alleged fraud.

*Sixth*, the Complaint should be dismissed for lack of personal jurisdiction.  Plaintiff failed to plead any facts showing that Mr. Izosimov, a citizen of Sweden and Russia and resident of Sweden, has any connection to the United States or that the exercise of jurisdiction over him would be reasonable.

## BACKGROUND[5]

### I.   Service of the Complaint More Than Two Years After It Was Filed

Plaintiff filed the Original Complaint on November 4, 2015, and a summons for Mr. Izosimov was issued the following day (*see* ECF No. 1, ECF No. 6).  Nonetheless, Plaintiff inexplicably never properly served the Original Complaint (or the Amended Complaint) or summons on Mr. Izosimov before finally requesting a waiver of service on January 9, 2018, more than two years later.

Plaintiff first contacted Mr. Izosimov via a letter to his home address on approximately November 6, 2017, more than two years after filing the Original Complaint, stating that a process server had supposedly "served" him at VimpelCom's headquarters in Amsterdam on March 23, 2017 (over 500 days after the Original Complaint was filed) and that Mr. Izosimov was in default because he had not responded.  (*See* November 6, 2017 Letter to Izosimov, Ex. C).  But as Plaintiff was well aware, Mr. Izosimov had stepped down as CEO and resigned from VimpelCom in June 2011, (*see* ¶ 19 in the Original Complaint; ¶ 14 in the amended Complaint; VimpelCom Press Release, dated May 16, 2011, Ex. G), almost six years earlier.

---

[5] For purposes of this motion, we provide only the background relevant to the claims against Mr. Izosimov.  A more fulsome description of the Complaint is set forth in the Court's September 19, 2017 Memorandum and Order. *See In re VEON Ltd. Sec. Litig.*, No. 15-CV-08672-ALC, 2017 WL 4162342, at *1 (S.D.N.Y. Sept. 19, 2017).

## II.   Allegations in the Complaint

The Complaint asserts claims against VimpelCom and several of its current and former employees under § 10(b) of the Exchange Act, as well as "control person" claims against the individuals under § 20(a).   Relying almost exclusively on the DPA, Plaintiff claims that VimpelCom made public statements that were false and misleading because the Company did not disclose that it had made improper payments in Uzbekistan and did not maintain effective internal controls (¶¶ 96-148).

### A.   The Single Substantive Allegation Against Mr. Izosimov

With respect to Mr. Izosimov, who was not charged in connection with any of the alleged conduct, the Complaint is remarkably sparse.   Indeed, buried within almost 40 pages of allegations are only two references to Mr. Izosimov.   First, Mr. Izosimov is identified as the Company's CEO from October 2003 to June 2011 (¶ 14), and second, the Complaint alleges that Mr. Izosimov signed a SOX certification on behalf of the Company in its 2010 Form 20-F (¶ 108).   There is no other mention of Mr. Izosimov.

Mr. Izosimov's SOX certification stated, in relevant part:

> ***Based on my knowledge***, this report does not contain any untrue statement of a material fact or omit to state a material fact…;
>
> ***Based on my knowledge***, the financial statements … in this report, fairly present … the financial condition … of the company…;
>
> The company's other certifying officer and I … have … [d]esigned such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, … [e]valuated the effectiveness of the company's disclosure controls and procedures and presented in this report our conclusions … and [d]isclosed in this report any change in the company's internal control over financial reporting … ; and
>
> The company's other certifying officers and I have disclosed, ***based on our most recent evaluation*** …, to the company's auditors … [a]ll significant deficiencies and material weaknesses in the design or

5

> operation of internal control … and [a]ny fraud … that involves
> management or other employees who have a significant role in the
> company's internal control over financial reporting."

*See* Ex. B (emphasis added).[6]

The Complaint does not allege that Mr. Izosimov's certification contains any misrepresentation or is otherwise false.  It does not allege, for example, that Mr. Izosimov failed to report any weakness or fraud to the Company's auditors or that he had any knowledge that any information in the 2010 Form 20-F was false or misleading.  Nor does it allege that Mr. Izosimov is responsible for any other statement described in the Complaint.  Instead, the Complaint largely parrots the DPA, detailing the actions taken and statements made by an unidentified group of individuals that Plaintiff simply refers to as "management."  *See, e.g.*, ¶¶ 36, 45 50.

Notably, the Complaint does not include any particularized allegation at all against Mr. Izosimov.  Despite alleging misconduct by unspecified members of VimpelCom "management" spanning over a period of almost ten years, Plaintiff never makes any attempt to specifically identify the members of management it is referencing.  This is particularly problematic as to Mr. Izosimov, as the Complaint concedes he resigned from the company in June 2011, but the generic references to VimpelCom "management" go well past that date.  (*See* ¶¶ 58, 59, 63).

## B.    Control Person Allegations Against the "Individual Defendants"

Plaintiff also includes Mr. Izosimov among the "Individual Defendants" against whom the Complaint makes a single conclusory allegation: the "Individual Defendants acted as controlling persons of VimpelCom within the meaning of § 20(a) of the 1934 Act," and "[b]y virtue of their

---

[6] The Court may take judicial notice of VimpelCom's 2010 Form 20-F, which included Mr. Izosimov's SOX certification. *See In re VEON Ltd. Securities Litigation*, 2017 WL 4162342, at *1 ("The Court also takes judicial notice of VEON's public filings, many of which Plaintiffs quote from at length in the Amended Complaint.") (citation omitted).

positions with the Company, and ownership of VimpelCom securities, the Individual Defendants had the power and authority to cause VimpelCom to engage in the wrongful conduct" described in the Complaint.  (¶ 189).

The Complaint does not contain any factual allegation supporting these conclusory claims and notably includes at least one allegation to the contrary, stating that "VimpelCom controlled the Individual Defendants and all of its employees."  (¶ 189).

## III.    The Court's Memorandum Opinion and Order

On September 19, 2017, the Court issued a Memorandum Opinion and Order granting in part and denying in part VimpelCom's motion to dismiss the Complaint.  *In re VEON Ltd. Sec. Litig.*, No. 15-CV-08672-ALC, 2017 WL 4162342, at *13 (S.D.N.Y. Sept. 19, 2017) (the "Order"). With respect to the Company's financial disclosures, the Court concluded that many of the misstatements alleged in the Complaint were not actionable because the statements were "nothing more than a narrative restatement of accurate financial reporting" that did "not sufficiently place the company's sales in Uzbekistan at issue."  *Id*. at *6.

Among the statements the Court deemed not actionable were the Plaintiff's allegations related to statements in the December 2, 2010 Form 6-K (¶ 96 (reporting increased broadband subscriptions in Uzbekistan)), March 29, 2011 Form 6-K (¶ 98 (reporting net operating revenue increase in Uzbekistan)), June 1, 2011 6-K (¶ 99 (reporting net operating revenue increase in Uzbekistan)) and June 30, 2011 20-F (¶ 102 (related number of customers in Uzbekistan)).  *Id.* at *6.  The Court also found that statements in the Company's annual reports related to government oversight in Uzbekistan (*see, e.g.*, ¶ 104) are not actionable.  *Id.* at *7.  The Court did not dismiss, however, statements in the Company's disclosures related to equal protection under Uzbek law and the effectiveness of the Company's internal controls over financial reporting.  *Id.* at *7.

7

The Court did not address Mr. Izosimov's SOX certification in its Order, and Plaintiff did not allege that Mr. Izosimov made any false statement in any Form 6-K or 20-F referenced in the Complaint or addressed in the Order.

## ARGUMENT

## I.    Plaintiff Did Not Timely Serve Mr. Izosimov

As a threshold matter, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006).  Accordingly, under Fed. R. Civ. P. 12(b)(5), a court may dismiss an action against a defendant on the ground of "insufficient service of process" where service was not timely completed or properly effected.  *See C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005).  Plaintiff bears the burden of proving that service was sufficient, and in resolving a motion to dismiss for insufficient service of process, a court "must look to matters outside the complaint."  *Id.* at 427 (quoting *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002)).

The time limit for service is set forth in Fed. R. Civ. P. 4(m), which at the time the Original Complaint was filed provided that if a defendant was not served within 120 days after the complaint was filed, "the court … must dismiss the action" unless "the plaintiff shows good cause for the failure," in which case, the court can extend the time for service.  *See* Fed. R. Civ. P. 4(m). Here, Plaintiff unquestionably failed to serve Mr. Izosimov within the 120-day time limit or even within any reasonable timeframe.   Plaintiff filed the Original Complaint on November 4, 2015,

but did not properly serve Mr. Izosimov until requesting a waiver of service on January 9, 2018, more than two years later.[7]  (*See* Ex. A).

That Plaintiff needed to serve Mr. Izosimov in Sweden, where he works and resides, is of no consequence.  As the Second Circuit has held, Rule 4(m)'s exception to the 120-day time limit for service in a foreign country is inapplicable where, as here, service was not attempted within the 120-day timeframe.  *See e.g., DEF v. ABC*, 366 F. App'x 250, 253 (2d Cir. 2010) (noting that the Second Circuit has "held inapplicable the foreign country exception … where a party did not attempt service within the 120–day limit and 'ha[d] not exactly bent over backward to effect service.'" (quoting *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985)).

For example, in *DHL Global Forwarding Management Latin America, Inc. v. Pfizer, Inc.*, the court granted a motion to dismiss for failing to properly serve process where, although the plaintiff had mailed the summons and complaint to the defendant in Brazil within a week of filing, it did not complete service in an authorized manner within 120 days.  *See* No. 13-CV-8218-KBF, 2014 WL 5169033, at *7 (S.D.N.Y. Oct. 14, 2014).  The court acknowledged that while Rule 4(m) otherwise contains an exception for service in a foreign country, that exception is inapplicable "where a plaintiff does not attempt to serve process on a foreign defendant in an authorized manner."  *Id.* at *3.  The court dismissed the complaint, less than a year after it was filed, concluding that service by mail in Brazil was not authorized under Brazilian law and the plaintiff had not otherwise made an attempt at authorized service within the 120-day limit.  *Id.* at *7.  *See Russo Sec., Inc. v. Ryckman*, 159 F. App'x 294, 295 (2d Cir. 2005) ("where, as here, a party does

---

[7] The filing of an amended complaint does not restart the 120 day period for service under Rule 4(m). *See Cioce v. Cty. of Westchester*, No. 02-CIV-3604, 2003 WL 21750052, at *3 (S.D.N.Y. July 28, 2003) (dismissing the complaint and finding that the defendant was "mistaken in thinking that time began to run under the Rule [4(m)] from the filing of any amended complaint and not the institution of the lawsuit.") *aff'd,* 128 F. App'x 181 (2d Cir. 2005).

not attempt service of process on a foreign defendant … claims may be dismissed pursuant to the 120–day time limit established by Federal Rule of Civil Procedure 4(m), and the exception for service of process for foreign entities is "inapplicable."); *Mentor Ins. Co. (U.K.) v. Brannkasse*, 996 F.2d 506, 512–13 (2d Cir. 1993) (same).

Notably, in the *DHL* case, the plaintiff had actually made a timely attempt at service, albeit improperly, and less than a year had passed before the court dismissed the complaint.  Here, despite having a summons in hand on November 5, 2015 (*see* ECF No. 6), Plaintiff  did not even attempt to "serve" Mr. Izosimov until March 23, 2017, over *500 days* after the Original Complaint was filed, when a process server apparently attempted to serve Mr. Izosimov at VimpelCom's headquarters in Amsterdam.  As Plaintiff was well aware, however, by March 2017, Mr. Izosimov had not worked for Vimpelcom for almost *six years*.  (*See* ¶ 14 (identifying Mr. Izosimov as the Company's CEO from October 2003 until June 2011)).

Under the circumstances, there is not good cause for the Court to extend the time for service.  "Good cause" is found "only in exceptional circumstances" and is "measured against the plaintiff's reasonable efforts to effect service," including "whether the plaintiff was diligent in making reasonable efforts to effect service."  *See George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432–33 (S.D.N.Y. 2016) (quoting *Vantone Grp. Ltd. Liab. Co. v. Yangpu Ngt Indust. Co.,* No. 13-CV-7639-LTS-FM, 2016 WL 3926449, at *2 (S.D.N.Y. July 15, 2016)).

There is simply nothing diligent or reasonable about Plaintiff's attempt to serve Mr. Izosimov at VimpelCom, where Plaintiff knew he would not be.  Indeed, Plaintiff's half-hearted attempt to serve him at VimpelCom is particularly hard to excuse because Plaintiff obviously was able to easily obtain Mr. Izosimov's home address, as demonstrated by the default letter they sent

to him on November 6, 2017, (*see* November 6, 2017 Letter to Izosimov, Ex. C) and, in any event, Mr. Izosimov's address was easily publicly accessible as far back as 2014.[8]

Plaintiff's attempt to serve Mr. Izosimov at his former employer also was unreasonable because it did not comply with either Dutch law, where service was attempted, or Swedish law, where Mr. Izosimov resides. In both of those jurisdictions, service cannot be effected in the manner attempted here. (*See* Declarations of Carel Raymakers (Ex. E) and Rikard Wikström-Hermansen (Ex. F)). *See DHL Global*, 2014 WL 5169033, at *7 (service in Brazil in a manner not authorized under Brazilian law not credited as a service attempt for the purpose of Rule 4(m)).

What's more, the delay here is extreme, further reflecting Plaintiff's lack of diligence and that there is no good cause warranting an extension. Even if – hypothetically – the Court were to credit Plaintiff's attempt to serve him at VimpelCom in March 2017, that was over *500 days* after the Original Complaint was filed, grossly exceeding the 120-day limit. *See In re Southold Dev. Corp.*, 148 B.R. 726, 730 (E.D.N.Y. 1992) (plaintiff failed to show it acted with due diligence in failing to attempt to serve foreign defendant within 120 days of filing complaint); *In re Crysen/Montenay Energy Co.*, 166 B.R. 546, 553 (S.D.N.Y. 1994) (passage of 14 months before plaintiff attempted service precluded a finding of diligence); *In re Bozel S.A.*, 549 B.R. 446, 450 (Bankr. S.D.N.Y. 2016), *aff'd*, No. 1:16-CV-3739-ALC, 2017 WL 3175606 (S.D.N.Y. July 25, 2017) (service more than two years after complaint was filed cannot satisfy due diligence standard).

Plaintiff was not without options if it felt it needed more time for service or could not easily locate Mr. Izosimov. For example, Plaintiff could have gone to the Court to seek an extension of time or to request an alternative means of service under Fed. R. Civ. P. 4(f)(3). It did none of these

---

[8] *See* Ex. D (reflecting that Mr. Izosimov's address was on a publicly available website as of at least September 2014).

things.  Accordingly, because Plaintiff failed without cause to serve Mr. Izosimov within 120 days of filing the Complaint, the Complaint should be dismissed with prejudice.

## II.   <u>Plaintiff's Claims Are Time-Barred</u>

The Complaint also should be dismissed with prejudice because Plaintiff's claims are time-barred by the applicable five-year statute of repose.  *See* 28 U.S.C. § 1658(b) (Exchange Act claims must be brought the earlier of five years after the alleged violation or two years after the discovery of facts constituting the violation).

Although the filing of a complaint ordinarily tolls the repose period, it is not tolled where, as here, plaintiffs unduly delay service or do not properly serve the defendant at all.  *See, e.g., In re Crysen/Montenay Energy Co.*, 166 B.R. at 554 ("It is beyond mere peradventure, that in situations constituting undue delay, where a defendant has never been served with process, no action against that defendant has been commenced and the statute of limitations continues to run"); *Camotex, S.R.L. v. Hunt*, 741 F. Supp. 1086, 1092 (S.D.N.Y. 1990) ("[tolling] rule does not apply, however, to cases involving undue delays in service which have 'the effect of negating the fact that a complaint was ever filed.'" (quoting *Gleason v. McBride*, 869 F.2d 688, 691 (2d Cir. 1989) (action properly dismissed as untimely where plaintiff waited excessive period of time after filing of original complaint to serve defendant)).

Accordingly, because Plaintiff did not serve Mr. Izosimov until more six years after June 30, 2011 – when he is alleged to have signed the SOX certification and resigned (Exs. B, G) – Plaintiff's claims are now time-barred.  *See Intesa Sanpaolo, S.p.A. v. Credit Agricole Corp. & Inv. Bank*, 924 F. Supp. 2d 528, 529 (S.D.N.Y. 2013) ("the violation that serves as the premise for a § 10(b) claim is deemed to have occurred on the date upon which the last alleged misrepresentation or omission was made.")  *See also SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173, 177 (2d Cir. 2016), *cert denied sub nom.* 137 S. Ct. 2326 (2017)

12

("Because the complaint fails to allege that the defendants made any misrepresentations within five years … [the plaintiff's] Section 10(b) and Rule 10b–5 claims are time-barred under § 1658(b)(2)'s five-year statute of repose.").

Notably, even if the Court were to toll the repose period for the 120 days allotted for service under Rule 4(m), the five-year repose period would still have run on October 26, 2016, more than a year before Plaintiff finally approached Mr. Izosimov to request a service waiver.  Further, even if the Court were to credit Plaintiff's March 23, 2017 attempt to serve Mr. Izosimov at VimpelCom's headquarters in Amsterdam, Plaintiff's claims still would be barred by the statute of repose, which had expired a full five months earlier.

For the same reasons, Plaintiff's control person claims under § 20(a) also are time-barred and should be dismissed.  *See Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 n.2 (2d Cir. 1993) ("Because Section 20 merely creates a derivative liability for violations of other sections of the Act, claims under Section 20 are governed by the limitations periods for those other sections."). *Fogel v. Wal-Mart de Mexico SAB de CV*, No. 13-CIV-2282-KPF, 2017 WL 751155, at *7 (S.D.N.Y. Feb. 27, 2017) (28 U.S.C. § 1658 "timeliness requirements apply with equal force to claims brought under Section 20(a).").

## III.   Plaintiff Fails To Plead Its Section 10(b) and Rule 10b-5 Claims with Heightened Specificity

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts that "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp.*, 550 U.S. at 1974).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The "mere possibility of misconduct" is insufficient to survive a motion to dismiss.  *Id.* at 1950.  "Where the plaintiff alleges facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, at *4 (citation and internal marks omitted).

In addition, where, as here, a plaintiff alleges fraud claims under § 10(b) of the Exchange Act, the complaint is subject to the heightened pleading requirements of the PSLRA and Fed. R. Civ. P. 9(b).  *See Id.* at *4.  Under Rule 9(b), a complaint must: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) were fraudulent."  *Id.* at *4 (citation and internal quotation marks omitted).

To state a claim under Section 10(b) and Rule 10b–5, a plaintiff must allege that the defendant "(1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury."  *Id.* (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 90 (2d Cir. 2007).

## A.   The Complaint Fails to Allege Any Material Misstatements or Omissions

Here, Plaintiff's claims against Mr. Izosimov are a failure out of the gate:  the Complaint fails to allege that Mr. Izosimov made any materially false statement or omission.  The only substantive allegation in the Complaint referencing Mr. Izosimov is a single paragraph stating that VimpelCom's 2010 Form 20-F contained a SOX certification signed by him.  (¶ 108).  There is no allegation that the certification is false, nor did Plaintiff identify a single misstatement in the certification.  Moreover, there is no allegation about Mr. Izosimov after June 2011 (when he left the company (Ex. G)).

14

Accordingly, Plaintiff's claim fails to meet the PSLRA pleading standard and should be dismissed.  *See Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (To satisfy the particularity requirements of Fed. R. Civ. P. 9(b) and the PSLRA, a complaint must "specify the statements that the plaintiff contends were fraudulent"); *Rok v. Identiv, Inc.*, No. 15-CV-5775-CRB, 2017 WL 35496, at *9 (N.D. Cal. Jan. 4, 2017) (dismissing securities claim because plaintiff failed to identify which statement in the SOX certification was false or misleading).

Mr. Izosimov's certification is comprised of essentially three categories of statements. First, Mr. Izosimov certified that "[b]ased on [his] knowledge," the 2010 Form 20-F fairly presented the financial condition of the Company and did not contain any untrue statements. Second, he certified that he, along with the other certifying officers, had designed (or caused to be designed) and evaluated the Company's disclosure controls over financial reporting and presented in the Form 20-F their conclusions about the effectiveness of those controls.  (*See* SOX certification, Ex. B). Third, Mr. Izosimov certified that, based on his evaluation, any material issues were disclosed to the Company's auditors.  Plaintiff failed to plead facts reflecting that any category of information was false or misleading.

First, there is no allegation anywhere in the Complaint reflecting that Mr. Izosimov failed to make any necessary disclosure to the Company's auditors.  Second, with respect to statements Mr. Izosimov qualified as "based on his knowledge," Plaintiff failed to plead any facts that Mr. Izosimov did not believe those statements were true.  Where a plaintiff asserts the falsity of a "statement of belief or opinion," the plaintiff must plead that it "was both objectively false and disbelieved by the defendant at the time it was expressed."  *See In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 290 (S.D.N.Y. 2014), *aff'd,* 616 F. App'x 442 (2d Cir. 2015) (quoting *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011)).  Having failed to plead

that Mr. Izosimov was aware or had reason to believe any of the statements were not true, Plaintiff has failed to state a claim. *See Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, No. 14-CV-3251-JPO, 2017 WL 4386902, at \*13 (S.D.N.Y. Sept. 29, 2017) (plaintiff's failure to allege knowledge of an FCPA bribery scheme undermined allegation that an executive's SOX certification given "based on [his] knowledge" was false).

There similarly are no factual allegations showing that any of Mr. Izosimov's certifications about disclosure controls were false or misleading. Plaintiff cannot support claims against Mr. Izosimov merely with the DPA that the Company (not Mr. Izosimov) "failed to implement adequate internal accounting controls" (¶ 107). First, as discussed above, Plaintiff has failed to plead any fact that Mr. Izosimov had reason to believe his statements were false. Second, the statements in the DPA concerning internal controls cannot be imputed to Mr. Izosimov. S*ee City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 690 n.34 (6th Cir. 2005) (noting that while knowledge may be imputed from an individual officer to the company, such knowledge may not be imputed from the corporation to the corporate officer).

In short, even if Plaintiff had identified a potential false or misleading statement in the certification, which it did not, the Complaint nonetheless fails to satisfy the PLSRA requirement that Plaintiff "explain why the statements (or omissions) were fraudulent," and Count 1 therefore should be dismissed. *See In re Banco Bradesco S.A. Sec. Litig.*, No. 1:16-CV-4155-GHW, 2017 WL 4381407, at \*38 (S.D.N.Y. Sept. 29, 2017) (dismissing claims that SOX certification was false where plaintiff "failed to plead why [the statement in the certification] was false or misleading"); *Barrett v. PJT Partners Inc.*, No. 16-CV-2841-VEC, 2017 WL 3995606, at \*6 (S.D.N.Y. Sept. 8, 2017) (dismissing claims where "[c]omplaint does not allege with particularity how the SOX Certifications are false.").

**B.**     **The Complaint Fails to Plead Scienter as to Mr. Izosimov**

The Complaint also should be dismissed with prejudice because Plaintiff failed to plead scienter.  It is well established that plaintiffs alleging securities fraud must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  "The requisite state of mind in a Rule 10b-5 action is 'an intent to deceive, manipulate or defraud.'"  *In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, at *9 (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir. 2000)).  In order to plead a strong inference of fraudulent intent, a plaintiff must allege particularized facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Comm'ns,* 493 F.3d at 99.

Here, Plaintiff does not allege Mr. Izosimov had a motive or opportunity to commit the fraud.  *See In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, at *10 ("Plaintiffs do not argue that they have alleged scienter under the motive and opportunity prong.").  Accordingly, "the strength of the circumstantial allegations" of conscious or reckless misbehavior "must be correspondingly greater."  *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) ("Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater.") (citations omitted).

To demonstrate that Mr. Izosimov acted with conscious misbehavior or recklessness, Plaintiff is required to demonstrate that "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  *See also Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d

287, 297 (S.D.N.Y. 2010) ("[a] reckless disregard for the truth means conscious recklessness – i.e., a state of mind *approximating actual intent and not merely a heightened form of negligence*") (emphasis in original) (internal marks omitted).

Plaintiff's allegations against Mr. Izosimov fall far short of these standards.  Indeed, the Complaint does not provide *any* evidence of or reference to any behavior by Mr. Izosimov, other than the two paragraphs identifying his title and alleging that he signed a SOX certification related to the Company's 2010 Form 20-F.  There is not a single other individualized allegation against him.  Indeed, even if the statements in the Company's 2010 Form 20-F itself could be attributed to Mr. Izosimov – which the Complaint does *not* allege – the claims against Mr. Izosimov would still fail.  There simply are no facts to suggest, let alone create, a "strong inference" that Mr. Izosimov acted with an intent to deceive or was reckless.

Plaintiff's two lone allegations against Mr. Izosimov both are insufficient to establish scienter.  First, Plaintiff cannot raise an inference of fraudulent intent based solely on Mr. Izosimov's signature on an SEC filing.  *See Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 614–15 (S.D.N.Y. 2015) ("[P]laintiff cannot raise an inference of fraudulent intent based on the signing of a certification without alleging any facts to show a concomitant awareness of or recklessness to the materially misleading nature of the statements"); *Hutchinson v. Perez*, No. 12-CIV-1073-HB, 2012 WL 5451258, at *6 (S.D.N.Y. Nov. 8, 2012), *amended*, No. 12-CIV-1073-HB, 2013 WL 93171 (S.D.N.Y. Jan. 8, 2013) ("Plaintiff cannot rely on the mere fact that Defendants … signed certifications … to support recklessness."); *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 590 (S.D.N.Y. 2010) (granting motion to dismiss as to certain individual defendants where those defendants merely "signed [the company's] SEC disclosures").

Second, to the extent Plaintiff would have the Court draw a negative inference based on Mr. Izosimov's position as CEO, the Complaint similarly fails. "Courts have routinely rejected the attempt to plead scienter based on allegations that because of defendants' board membership and/or their executive managerial positions, they had access to information concerning the company's adverse financial outlook." *Teamsters Allied Benefit Funds v. McGraw*, No. 09-CIV-140-PGG, 2010 WL 882883, at *11 (S.D.N.Y. Mar. 11, 2010) (internal marks omitted). *See, e.g., Bd. of Trustees of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012) ("[C]ourts in this District have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight.") (citation and internal quotation marks omitted); *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 234 (S.D.N.Y. 2009) ("Courts may not infer scienter 'solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information.") (citations omitted).

In this case, the Complaint relies almost exclusively on the DPA and references therein to the conduct of VimpelCom "management." These allegations, however, create no inference of scienter against Mr. Izosimov. To begin with, Mr. Izosimov is not a party to the DPA, did not consent to it, and is not bound by it. Moreover, Plaintiff may not impute the knowledge of the Company to Mr. Izosimov. *See e.g., City of Monroe Ret. Sys.*, 399 F.3d at 690 (knowledge may not be imputed from the corporation to the corporate officer). *See also In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 550 (S.D.N.Y. 2007) ("officers cannot be imputed with knowledge about all transactions which occur at a corporation for purposes of pleading scienter").

Indeed, Plaintiff's attempt to lump all "management," over the course of almost 10 years, together amounts to little more than an attempt at improper group pleading, similar to its conclusory allegation that "All Defendants" knowingly made false statements.  (*See* ¶ 185, alleged against "All Defendants").  Courts in the Second Circuit have repeatedly rejected such attempts to evade heightened pleading standards by using group pleading to show scienter.  *See Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1040 (S.D.N.Y. 1993) ("Throughout the complaint defendants are clumped together in vague allegations regarding 'some or all of the defendants.' Such wide-scale clumping is unacceptable.").[9]

In *In re Vale S.A. Securities Litigation*, for example, the court dismissed claims that a CEO had signed a false SOX certification where the complaint failed to adequately allege that the CEO had any "actual knowledge that statements … were false or misleading" and instead relied on pleadings against all the defendants generally. No. 15-CV-9539-GHW, 2017 WL 1102666, at *31 (S.D.N.Y. Mar. 23, 2017).  In that case, which addressed claims that a company failed to disclose known safety issues that caused a dam to collapse, the plaintiff based its claims against the CEO only on general allegations that all the "Defendants knew or were reckless in not knowing about problems at [the Dam]."  *Id.* at *32.  The court concluded that "scienter may not be alleged based upon [such] group pleading" and that, pursuant to Rule 9(b), "[i]n a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible."  *Id.* at *32 (quoting *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009)).  *See Gurfein v. Ameritrade, Inc.*, 411 F. Supp. 2d 416, 427 (S.D.N.Y. 2006) (dismissing complaint that "lumps defendants together,"

---

[9] Further, despite Plaintiff's heavy reliance on actions taken by VimpelCom "management," Plaintiff makes no effort to identify a single member of "management" and never once differentiates amongst the various members of management.  Mr. Izosimov left the Company in 2011, yet the alleged underlying improper payments continued at least until 2013 and Plaintiff alleges misrepresentations made as recently as 2015.

noting that such "broad-brush allegation against numerous defendants is inadequate") (citation omitted).  The rationale in *Vale* applies with equal force here, and the Plaintiff's attempt to lump Mr. Izosimov along with the other defendants (or in with the unspecified members of "management") should not be credited.

**IV.    The Complaint Fails to State a Section 20(a) Claim Against Mr. Izosimov**

"To plead a Section 20(a) claim, plaintiff must allege (1) a primary violation of the 1934 Act; (2) control of the primary violator by the controlling defendant; and (3) the defendant's culpability in the fraud perpetrated by the controlled person." *ATSI Commc'ns, Inc.*, 493 F.3d at 108.  To the extent Plaintiff has alleged a primary violation against VimpelCom, *see In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, at *1 (denying in part VimpelCom's motion to dismiss), the Complaint nonetheless fails to establish that Mr. Izosimov had control of VimpelCom or shared in its culpability.  Plaintiff's Section 20(a) claim therefore should be dismissed.

With respect to establishing "control," Plaintiff primarily relies on identifying Mr. Izosimov as the CEO from October 2003 until June 2011.  Mr. Izosimov's status as the CEO is inadequate to establish control.  *See, e.g., In re Alstom SA*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) ("In conducting [a 20(a) analysis] courts have held that officer or director status alone does not constitute control for the purposes of Section 20(a) liability.") (internal citation omitted); *Hemming v. Alfin Fragrances, Inc.*, 690 F. Supp. 239, 245 (S.D.N.Y. 1988) ("A person's status as an officer, director or shareholder, absent more, is not enough to trigger liability under § 20.").  Indeed, contrary to Plaintiff's claim that Mr. Izosimov was in control, the Complaint includes at least one allegation reflecting that, in fact, he was not in control: "*VimpelCom* controlled the Individual Defendants and all of its employees." (¶ 189) (emphasis added).[10]

---

[10] Plaintiff adds only a conclusory allegation against all Individual Defendants that "[b]y virtue of their positions with the Company, and ownership of VimpelCom securities, the Individual Defendants had the power and authority" to

With regard to Mr. Izosimov's culpability, for the reasons discussed above, Plaintiff has failed to show that Mr. Izosimov in any way shares in the Company's culpability: there are simply no factual allegations sufficient to state a claim against Mr. Izosimov.  Accordingly, Plaintiff's Section 20(a) claims should be dismissed.  *See In re UBS Auction Rate Sec. Litig.*, No. 08-CV-2967-LMM, 2009 WL 860812, at *3 (S.D.N.Y. Mar. 30, 2009) ("to allege control person liability under § 20(a), Plaintiffs' must allege some level of culpable participation at least approximating recklessness in the section 10(b) context") (quotation marks and citations omitted); *Kalin v. Xanboo, Inc*, 526 F. Supp. 2d 392, 406 (S.D.N.Y. 2007) (the "weight of Second Circuit precedent favors the view that a Plaintiff plead 'culpable participation' … with particularity" to state a Section 20(a) claim).

## V.   The Court Lacks Personal Jurisdiction Over Mr. Izosimov

Plaintiff bears the burden of establishing personal jurisdiction over the defendant and accordingly "must make a prima facie showing that jurisdiction exists."  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citation omitted).  In doing so, Plaintiff cannot rely on unsupported, conclusory allegations.  *See Tarsavage v. Citic Trust Co.*, 3 F. Supp. 3d 137, 143 (S.D.N.Y. 2014) ("[a] plaintiff may not rely on 'conclusory statements . . . without any supporting facts' " in pleading personal jurisdiction).

Here, the statutory basis for personal jurisdiction is found in the Exchange Act, 15 U.S.C. § 78aa, which "permits the exercise of personal jurisdiction to the limit of the Due Process Clause."  *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990) (citations omitted).  "For personal jurisdiction to comport with due process, (1) the defendant must have 'minimum contacts' with the forum, and (2) the exercise of personal jurisdiction must be reasonable."  *In re AstraZeneca*

---

cause the Company to engage in the alleged misconduct.  (¶ 189).  These group pleading allegations are insufficient to establish control.

*Sec. Litig.,* 559 F. Supp. 2d 453, 466 (S.D.N.Y. 2008), *aff'd sub nom. State Univ. Ret. Sys. of*

*Illinois v. Astrazeneca PLC*, 334 F. App'x. 404 (2d Cir. 2009) (citations omitted).

The Complaint fails to establish personal jurisdiction. The lone factual allegation

suggesting Mr. Izosimov had any contact with the United States at all is his signed SOX

certification. While signing an SEC filing can be the basis for jurisdiction, here it should not be

as there is no allegation that he participated in (or was even aware of) the alleged wrongdoing or

that it was being concealed.[11] *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569

(2d Cir. 1996) ("the weaker the plaintiff's showing on minimum contacts, the less a defendant

need show in terms of unreasonableness to defeat jurisdiction.") (internal marks omitted); *In re*

*Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 770 (S.D.N.Y. 2017) (a conclusory statement that

a foreign defendant caused an issuer to make false and misleading filings is not enough to support

personal jurisdiction); *In re AstraZeneca Sec. Litig.,* 559 F. Supp. 2d 453, 458, 467 (S.D.N.Y.

2008), *aff'd sub nom. State Univs. Ret. Sys. of Illinois v. Astrazeneca PLC*, 334 F. App'x 404 (2d

Cir. 2009) (allegations that defendants "caused the distribution of false and misleading reports and

statements" and knew "each of the representations alleged herein were materially false or

misleading" were "merely conclusory statements"). Here, Mr. Izosimov has no geographic ties to

the United States, and given that the Court has already ruled that the action can proceed against

the Company, Plaintiff will not be prejudiced.

---

[11] There can be no claim of general jurisdiction over Mr. Izosimov because he lived outside of the United States and worked for a foreign corporation based in the Netherlands. *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 350 (D. Md. 2004). It is well established that his position with the Company alone is insufficient to confer jurisdiction. *See In re Astrazeneca*, 559 F.Supp. 2d at 466-67 (Jurisdiction over "the representative of a corporation may not be predicated on jurisdiction over the corporation itself").

## **CONCLUSION**

For all of the foregoing reasons, the Court should dismiss the Complaint as to Mr. Izosimov

with prejudice.

Dated: New York, New York
       February 9, 2018

                        Respectfully submitted,

                        KOBRE & KIM LLP


                        By:   /s/ Steven W. Perlstein                   
                              Eric B. Bruce
                              Steven W. Perlstein
                              Brad H. Samuels (*pro hac vice motion to be filed*)
                        800 Third Avenue
                        New York, NY 10022
                        Telephone: (212) 488-1200
                        Eric.Bruce@kobrekim.com
                        Steven.Perlstein@kobrekim.com
                        Brad.Samuels@kobrekim.com

                        *Attorneys for Defendant Alexander Izosimov*

24