USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: March 11, 2021

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**In re Veon Ltd. Securities Litigation**

**15-cv-08672 (ALC)**

<u>**Opinion and Order**</u>

---

**ANDREW L. CARTER, JR., United States District Judge:**

Lead Plaintiff Westway Alliance Corp ("Westway" or "Plaintiff") brings this putative class action on behalf of all those who purchased the securities of Defendant VEON Ltd. ("VEON" or "the Company") between December 2, 2010 and November 3, 2015, against VEON. VEON moves to dismiss the Second Amended Complaint. For the reasons that follow, VEON's motion to dismiss is GRANTED.

## BACKGROUND

The following facts are taken from the allegations contained in the Second Amended Complaint, which are presumed to be true for purposes of this motion to dismiss. (ECF No. 156) (Second Amended Complaint ("Second Am. Compl.")). The Court also takes judicial notice of VEON's public filings, which Plaintiffs quote from at length in the Second Amended Complaint. *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Defendant VEON is a "multinational telecommunications company headquartered in the Netherlands and incorporated in Bermuda." Second Am. Compl. at ¶ 11. Its securities are publicly traded in the United States on the NASDAQ. *Id.* at ¶ 182. Plaintiffs also named as Defendants certain of VEON's current and former executives. *Id.* at ¶¶ 12-16.

On February 10, 2016, VEON entered into a deferred prosecution agreement ("DPA") with the United States Department of Justice, pursuant to which VEON pleaded guilty to a two-count criminal information charging the company with conspiracy to violate the anti-bribery and books

and records provisions of the Foreign Corrupt Practices Act of 1977 ("FCPA") and a violation of the internal controls provision of the FCPA. *Id.* at ¶¶ 2-3; *see also* Second Am. Compl., Ex. A (DPA). Pursuant to the DPA, VEON also agreed to pay more than $460 million in penalties and subject itself to outside compliance monitoring. Second Am. Compl. ¶ 5; DPA ¶¶ 7, 13-15.

In the Second Amended Complaint, Plaintiffs describe in detail the facts alleged in the criminal information against VEON and admitted by VEON in the DPA's Statement of Facts. *See* Second Am. Compl. ¶¶ 31-90. For present purposes, it suffices to say that, beginning in 2005, as VEON first looked to enter the Uzbek telecommunications market, through 2012, VEON made, or attempted to make, millions of dollars in improper payments to Gulnara Karimova, the eldest daughter of Uzbekistan's President, in an effort to achieve favorable treatment in Uzbekistan. Executives disguised these payments in VEON's books and records as legitimate transactions. *Id.* at ¶¶ 25, 31, 88-90. One of the ways in which these payments were made was through a partnership between VEON and Takilant Limited, a company owned by Karimova. *Id.* at ¶¶ 25, 39-41. This included a $25 million bribe paid in 2007 to secure certain 3G frequencies for VEON's wholly-owned subsidiary in Uzbekistan. *Id.* at ¶¶ 45-48. VEON also entered into sham consulting agreements with Takilant in 2008 and 2011, through which it funneled $32 million to Karimova in exchange for certain telecommunications assets and continued access to the Uzbek market. *Id.* at ¶¶ 49-65. VEON made an additional $10 million in payments to Karimova in 2011 and 2012, using a variety of sham transactions. *Id.* at ¶¶ 66-74. Plaintiffs also describe contemplated bribes in 2012 and 2013 that apparently were not completed. *Id.* at ¶¶ 75-77.

In addition to admitting much of the underlying conduct just described, in the DPA, VEON admitted that the company "failed to implement adequate internal accounting controls and failed to enforce the internal accounting controls it did have in place," thereby allowing the bribes to

Karimova. Second Am. Compl. ¶ 78. VEON also identified problems with its internal audit function, including a failure to have adequate processes for reviewing contracts and conflicts of interest. *Id.* at ¶¶ 79-84. The company did not have a designated full-time compliance function until 2013, and compliance was treated as a mere formality prior to that time. *Id.* at ¶ 86. Accordingly, VEON admitted that it had "little to no anticorruption compliance program." *Id.* at ¶ 87. Consistent with these admissions, at VEON's plea proceeding, a Government attorney asserted that there was "high-level knowledge of the bribery" at VEON. *Id.* at ¶ 91.

Plaintiffs allege that VEON admits numerous allegations in their answer to the Amended Complaint, including that VEON knowingly entered into contracts for fake consulting services with Takilant; executives conspired to take advantage of a resell process to conceal a $10 million bribe to Foreign Official via Takilant; VEON failed to implement adequate internal accounting controls and failed to enforce the accounting controls they had in place; VEON failed to implement a system for conducting, recording, and verifying due diligence on third parties; VEON failed to require that all consulting agreement be for bona fide services and that the services paid for were actually performed; VEON had little to no anticorruption compliance program; and that VEON disguised on its books and records over $114 million in bribe payments made to Foreign Official in exchange for the ability to do business in the Uzbek telecommunications market. Second Am. Compl. ¶ 95(a).

Plaintiffs also allege that VEON's omissions included that it disguised on its books and records over $114 million in bribe payments made to Karimova in exchange for the ability to do business in the Uzbek telecommunications market. Plaintiffs state that paragraphs 62-66 of the deferred prosecution agreement are material omissions that VEON had a duty close. Second Am. Compl. at ¶¶ 95(d)-95(e). Plaintiffs further assert that these material facts should have been

disclosed pursuant to 17 C.F. R. 240.13a-15(f)(1)-3. *Id.* at ¶ 95(c)-(e). Accordingly, Plaintiffs state that Westway purchased 30,000 VEON ADRS on December 10, 2010, two days after the start of the Class Period, and 50,0000 VEON ADRs on January 19, 2011. *Id.* at ¶ 95(f). Therefore, Plaintiffs assert that due to VEON's admission that the Company lacked effective internal accounting controls and made false entries in its books, VEON had a duty to disclose these material facts to Westway before the start of the Class Period. *Id.* at ¶ 95(f).

Additionally, Plaintiffs allege that VEON's conduct that formed the basis of its FCPA violations led to material misstatements and omissions in its SEC filings during the relevant time period. In particular, Plaintiffs allege that when VEON referred to a 17.8 increase in its broadband subscriptions, including in Uzbekistan, and revenue in general, it "put the topic of the cause of its financial success at issue," thereby obligating the company to report that the increase in subscriptions in Uzbekistan was due, at least in part, to the bribes paid to Karimova. Second Am. Compl. ¶ 97; *accord id.* ¶ 98-103, 109-17, 123-33, 139-46, 156-59, 161-62, 167-70. Plaintiffs do not allege that the actual numbers reported were inaccurate.

Plaintiffs also allege that VEON misrepresented that "[t]he government authorities responsible for supervising the telecommunications industry in the Republic of Uzbekistan are the Republic of Uzbekistan Cabinet and a specially authorized telecommunications agency." Second Am. Compl. ¶ 104. Plaintiffs contend that this was a misrepresentation because it failed to disclose the role that Karimova played. *Id.* at ¶ 105; *accord id.* ¶¶ 118-19, 134-35.

Finally, Plaintiffs identify a number of VEON's disclosures in its annual reports regarding the company's internal controls. In its annual reports for the calendar years 2010 and 2012, VEON stated that, "[b]ased on the assessment" of its "internal control over financial reporting," its management "believes our company maintained effective internal control over financial reporting"

during the relevant calendar year. Second Am. Compl. ¶¶ 106, 136. Stated somewhat differently in its 2014 Form 20-F, the company disclosed that, "as a result of management's assessment of our internal control over financial reporting as of December 31, 2014, management concluded, that that our internal control over financial reporting was effective." *Id.* at ¶ 164. That year, VEON also assured the market that its "internal control system was designed to provide reasonable assurance regarding the reliability of financial reporting." *Id.*; accord *id.* ¶ 120 (2011 Form 20-F). Plaintiffs also quote from VEON's website regarding the company's compliance program. *Id.* at ¶ 147.

In a similar vein, between 2010 and 2014, VEON executives signed certifications pursuant to the Sarbanes Oxley Act of 2002 that the information in the company's Forms 20-F was accurate. *Id.* at ¶¶ 108, 122, 138, 155, 165.

VEON later admitted in connection with its DPA that it:

> (a) failed to implement adequate internal accounting controls; (b) failed to enforce the internal accounting controls it did have in place, which permitted the above-referenced bribe payments to occur without detection or remediation; (c) failed to implement a system for conducting, recording, and verifying due diligence on third parties, including joint venture partners, consultants, reseller companies, and suppliers to uncover their true nature, beneficial ownership, and possible corruption risks; and (d) failed to require that all consulting agreements be for bona fide services, that agreed-upon payments were commensurate with the services to be performed, and that services paid for were, in fact, performed.

*Id.* at ¶¶ 107, 121, 137, 148.

Plaintiffs allege that, beginning with a Form 6-K disclosure on March 12, 2014, the truth began to emerge. Second Am. Compl. ¶ 149. VEON disclosed that it had been informed that the Securities Exchange Commission ("SEC") was conducting an investigation into the company and that its Amsterdam headquarters had been visited by Dutch law enforcement. The company stated that "[t]he investigation also appears to be concerned with the Company's operations in

Uzbekistan." That day, the price of VEON's American Depository Receipts ("ADRs") dropped 6.3%, from $8.85 the previous day to an intraday low of $8.29. *Id.* at ¶ 150. The following week, VEON disclosed that the United States Department of Justice also was investigating the company, and the ADR price declined 5.6%, from an intraday high of $9.07 to a low of $8.57. *Id.* at ¶¶ 151-52.

In VEON's 2013 Form 20-F filed on May 15, 2014, the company reiterated the existence of these investigations and provided more detail on the issues, which the company disclosed involved money laundering and bribery, and identified Karimova's company, Takilant. Second Am. Compl. ¶¶ 153-54. VEON also explained that, in 2013, the company began an internal investigation into its business in Uzbekistan and its relationship with Takilant, led by outside counsel with FCPA expertise. VEON made similar disclosures in its Form 20-F filed in 2015. *Id.* at ¶ 163.

After the close of the market on August 13, 2015, there were reports that United States authorities had asked their European counterparts "to seize roughly $1 billion in assets related to a wide-ranging criminal probe of alleged corruption by [VEON], MTS, and TeliaSonera, for paying hundreds of millions of dollars to businesses controlled by Ms. Karimova to secure wireless spectrum in Uzbekistan." Second Am. Compl. ¶ 171. After that report, VEON's ADR price fell from $5.56 on August 13 to an intraday low of $5.305 the following day. *Id.* at ¶ 172. Finally, on November 3, 2015, when VEON announced that it had reserved $900 million for litigation costs related to the ongoing investigations, the company's ADRs declined 5.0%, from the previous day's high of $3.665 to an intraday low of $3.48. *Id.* at ¶¶ 173-74.

**PROCEDURAL HISTORY**

After the Court consolidated this action with another related action against VEON and appointed Westway Alliance Corp. as the Lead Plaintiff in this action, Westway filed its Amended Complaint on behalf of a putative class of individuals who purchased VEON securities between December 4, 2010 and November 3, 2015. (*See* ECF No. 45.) Thereafter, VEON moved to dismiss the Amended Complaint, arguing that Plaintiffs had failed to state a cause of action under Rule 10b-5 because they did not adequately allege any actionable misstatements, scienter on behalf of the corporation, or loss causation. (ECF No. 47.) The Court granted the motion in part and denied the motion in part. (ECF No. 63.) Then on April 30, 2018, the Court granted the individual Defendants' motions to dismiss. (ECF No. 123.) VEON then filed a motion for judgment on the pleadings, which the Court denied without prejudice. (ECF No. 155.) Lead Plaintiff filed the Second Amended Complaint on April 14, 2020, and Defendant VEON moved to dismiss on May 15, 2020. (ECF No. 161.) Lead Plaintiff opposes the motion. (ECF No. 164) ("Pl's Memo."). VEON has submitted its reply brief, (ECF No. 166) ("Def's Reply"), and the Court considers the motion fully submitted.

I.   **LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff

alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681. Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court also may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

When plaintiff has alleged fraud claims under § 10(b) of the Exchange Act, the complaint is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud or mistake." To satisfy the particularity requirement, a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (citation and internal quotation marks omitted).

The PSLRA holds private securities plaintiffs to an even more stringent pleading standard. Under the PSLRA, a plaintiff must "(1) specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading; and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (internal citation and quotation marks omitted) (quoting 15 U.S.C. § 78u-4(b)). To determine that an inference of scienter is strong, the court must decide whether "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

### i. Section 10(b) Claim

Plaintiffs assert a securities fraud claim against VEON under § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Am. Compl. ¶¶ 184-87. To state a claim under § 10(b) and Rule 10b-5, a plaintiff must allege that the defendant "(1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *ATSI Commc'ns*, 493 F.3d at 105. VEON argues that Plaintiff has failed to allege any actionable omissions.

### i. Duty to Disclose

VEON is under a duty to speak on matters only if "(1) a statute or regulation requires disclosure or (2) disclosure is necessary to avoid rendering existing statements misleading by failing to disclose material facts." *Menaldi v. Och-Ziff Capital Management Group LLC*, 164 F. Supp. 3d 568, 579 (S.D.N.Y. 2016) (citing *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015)). Moreover, the securities laws and regulations do not create "a rite of confession"

whereby corporations have a duty "to disclose uncharged, unadjudicated wrongdoing." *See Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 164 (S.D.N.Y. 2018) (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014)); *see also In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) ("[F]ailure to disclose that . . . revenues were derived from 'unsustainable and illegitimate sources' " did not violate Section 10(b) because "the federal securities laws do not require a company to accuse itself of wrongdoing.").

"To base a claim on an omission, a plaintiff must also plead that the defendant had a duty to disclose the omitted fact." *Constr. Laborers Pension Tr. for S. California v. CBS Corp.*, 433 F. Supp. 3d 515, 531 (S.D.N.Y. 2020) (citing *Stratte-McClure*, 776 F.3d at 101. While Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information," *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011), speakers have a duty to disclose when a statement would otherwise be "inaccurate, incomplete, or misleading" without the omitted material, *Stratte-McClure*, 776 F.3d at 101 (quotation omitted). *See also Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) ("Even when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth.").

Lead Plaintiff posits three main arguments. First, Plaintiff argues that VEON's admissions that the Company had "knowingly failed to implement adequate controls governing due diligence, contract approval, and internal audit, and, at the time, was aware that its internal controls were not effective" is material information that was omitted and concealed off the market; next, Plaintiff argues that VEON's omissions regarding the internal controls, bribe payments disguised on its books and records, and false recording of a bribe are material omissions, and because Plaintiff

purchased ADRs after the material omissions, Plaintiff has standing; and lastly, Plaintiff argues that since the information is material, VEON's argument that Plaintiff has failed to identify a statute or regulation that requires disclosure is unavailing. Moreover, Plaintiff posits that VEON has violated, 17 C.F. R. § 240.13a-15(a), and that VEON's admission that it "knowingly failed to implement adequate controls governing due diligence, contract approval, and internal audit, and, at the time, was aware that its internal controls were not effective" is material information that a reasonable investor is entitled to know.

Here, however, Lead Plaintiff has failed to establish that VEON had a duty to disclose the omissions prior to the first time VEON spoke on the internal issues in its June 2011 Form 20-F. Lead Plaintiff conflates the purported materiality of the omissions with disclosure. The Court notes that these are two separate inquiries. Even assuming *arguendo* that the omissions are material as Lead Plaintiff posits, "[a] corporation does not have a duty to disclose information simply because it is material." *DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 434 (S.D.N.Y. 2018) (*quoting Matrixx Initiatives*, 563 U.S. at 44)). "[I]t bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information. Disclosure is required under these provisions only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx Initiatives, Inc.*, 563 U.S. at 44 (quoting 17 C.F.R. § 240.10b–5(b)). *See also Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152–53 (2d Cir. 2013). Thus, "[d]isclosure of an item of information is not required . . . simply because it may be relevant or of interest to a reasonable investor*." Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002). Because of this, "companies may remain silent even with respect to information that a reasonable investor might consider material so long as they do not have an underlying duty to disclose that information." *In re Rockwell Med., Inc. Sec. Litig.*, No. 16 CV 1691, 2018 WL

1725553, at *6 (S.D.N.Y. Mar. 30, 2018) (citation, alterations, and internal quotation marks omitted).

Accordingly, even if Lead Plaintiff were to establish materiality, Plaintiff must then point to a statute or regulation that requires disclosure, or alternatively, provide a prior statement made by VEON that would then render disclosure necessary to prevent that prior statement from being misleading. *Menaldi*, 164 F. Supp. 3d at 579. While Plaintiff argues that VEON violated 17 C.F.R. § 240.13a-15, that regulation does not create disclosure requirements. Rather, the regulation expands on controls and procedures for financial reporting and "provide[s] reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes . . . and includes those policies and procedures" relating to maintenance of accurate records of transactions. 17 C.F.R. § 240.13a-15(f). Moreover, the Court has not found, and Plaintiff has not posited any case that provides that the aforementioned regulation creates disclosure requirements. Therefore, Plaintiff has failed to establish that VEON had a duty to disclose prior to the filing of the June 2011 Form 20-F. VEON's motion to dismiss must be granted.

    **ii.**    **Standing**

Lead Plaintiff argues that even if there are no material omissions, Plaintiff still has standing, and Plaintiff's claims are not moot until all motions or appeals have been exhausted. The Court disagrees. As there are no material omissions, there is no longer a live controversy between Lead Plaintiff and VEON, and Lead Plaintiff must be dismissed from this action.

Where the Court has found that a Lead Plaintiff's claims have not been mooted has generally been in class actions already certified under Rule 23, where a claim is deemed moot as to the named Plaintiff but persists as to the remaining class members. *See Robinson v. Sheet Metal Workers' Nat. Pension Fund, Plan A*, 515 F.3d 93, 97 n. 4 (2d Cir. 2008) ("[T]he mootness of the

claims of one of two lead plaintiffs does not moot the class action so long as 'there are questions of law or fact common to the class' and 'the representative parties will fairly and adequately protect the interest of the class." (citing Fed .R. Civ. P. 23(a)(2), (4))). This action; however, is not yet a class action.

It is well established that, in the class action context, a named Plaintiff must have standing to assert both its own individual claims and the class claims brought on behalf of the putative class. *See McCall v. Chesapeake Energy Corp.*, 509 F. App'x 62, 64 (2d Cir. 2013); *Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011) ("Of course, a class action cannot be sustained without a named plaintiff who has standing."). Accordingly, "[f]or each claim asserted in a class action, there must be at least one class representative (a named plaintiff or a lead plaintiff) with standing to assert that claim." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 331 (S.D.N.Y. 2012); *see also Jobie O. v. Spitzer*, No. 03 Civ. 8331, 2007 WL 4302921, at *3 (S.D.N.Y. Dec. 5, 2007) ("[I]n order to represent a class, the named plaintiff must personally have standing to litigate his own claim."). If Plaintiffs lack standing to assert a particular claim, the Court "lacks subject matter jurisdiction to entertain the class relief requested" as to that claim. *See Jobie O.*, 2007 WL 4302921, at *3. And claims "for which the class representatives do not have standing[ ] must be dismissed." *Fort Worth Emps.' Ret. Fund*, 862 F. Supp. 2d at 332.

Moreover, even if a case has several named Plaintiffs, where the claims of a particular named Plaintiff have become moot, and the other named Plaintiffs lack standing to assert them, those claims are typically dismissed. *See*, *e.g.*, *Leonard v. Abbott Labs.*, Inc., No. 10 CV 4676, 2012 WL 764199, at *7 (E.D.N.Y. Mar. 5, 2012) ("Generally, the dismissal of the named plaintiffs claims before a motion for class certification has been filed would result in the dismissal of the complaint, or, in this case, the putative New York class' NYCPA cause of action."); *Bowens v. Atl. Maint.*

*Corp.*, 546 F. Supp. 2d 55, 76 (E.D.N.Y. 2008) ("The unnamed class members are not technically part of the action until the court has certified the class; therefore, once the named plaintiffs' claims are dismissed, there is no one who has a justiciable claim that may be asserted."). Accordingly, Lead Plaintiff no longer has a personal stake in the outcome of this lawsuit and must be dismissed from this action.

However, the Second Amended Complaint puts forth Plaintiffs Sherman Steele, Leonard Karpwich, and Stan Sinitsa as additional Plaintiffs in this action. Thus, in the interest of judicial efficiency, the Court shall reopen the Lead Plaintiff appointment process. "In the absence of any guidance in the PSLRA, the Court shall deem any movant timely who either (a) filed a complaint in these consolidated actions, as explicitly contemplated by the PSLRA, 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa) or (b) moved to be appointed Lead Plaintiff in response to the initial notice of pendency." *See In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002). Additionally, the Court shall allow the three Plaintiffs named in the Second Amended complaint to move for appointment as Lead Plaintiff.

## CONCLUSION

For the aforementioned reasons, the Court grants VEON's motion to dismiss and dismisses Lead Plaintiff Westway from this action. This resolves ECF No. 161. The Court reopens the Lead Plaintiff selection process consistent with this opinion. Any motions for appointment as Lead Plaintiff shall be filed by April 8, 2021; VEON shall oppose the motions by May 6, 2021; and any replies shall be filed by May 12, 2021.

**SO ORDERED.**

**Dated**: March 11, 2021
New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**