UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
IN RE VEON LTD. SECURITIES LITIGATION  :  No. 15 Civ. 8672 (ALC) (OTW)
                                       :
                                       :  **OPINION & ORDER**
-------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

**I.      Overview**

This opinion considers two competing Motions for Appointment of Lead Plaintiff in a securities fraud class action brought on behalf of certain shareholders of VimpelCom. VimpelCom,[1] a large telecommunications company with business all over the world, paid millions of dollars in bribes to the eldest daughter of Uzbekistan's president in order to receive favorable treatment in the country. The subsequent disclosure of these payments, as well as disclosures concerning criminal investigations into the company, caused a drop in its stock price and concomitant losses for its shareholders, leading to this putative class action.

The two competing Motions for Appointment as Lead Plaintiff are brought by Boris Lvov ("Lvov") and a group of Plaintiffs comprised of Sherman Steele, Leonard Karpwich, and Stan Sinitsa ("SKS"). *See* ECF 173, 176. Both movants propose to replace prior Lead Plaintiff Westway, which has been dismissed from this action for lack of standing. Lvov originally sought and was denied Lead Plaintiff status in 2015, and has been participating in the litigation since that time. SKS became parties to this litigation more recently, by being added as Named

---

[1] After the filing of the original complaint, VimpelCom's name was changed to VEON. The Court refers to the defendant company as VEON.

1

Plaintiffs in the Second Amended Complaint filed on April 14, 2020. (Second Amended Complaint, ECF 156, hereinafter "SAC").

For the reasons provided below, SKS's motions for appointment as Lead Plaintiff and motion for appointment of Lead Counsel are **DENIED**, and Movant Lvov's motion for appointment as Lead Plaintiff and for appointment of Lead Counsel are **GRANTED**.

## II.     Background and Procedural History

This securities class action was brought on behalf of individuals who purchased VEON shares between June 30, 2011 and November 3, 2015, alleging violations of the Securities Exchange Act of 1934 and Rule 10b-5.[2] (SAC, ECF 170). The SAC alleges that during the relevant class period, Defendants made false and misleading statements, failed to disclose adverse material facts about VEON's business, operations, and prospects, and that the disclosure of these acts and omissions caused a precipitous decline in VEON's stock price. (ECF 1, 31 at 1). Defendant's wrongful conduct during the relevant period gave rise to investigations by the Securities and Exchange Commission ("SEC") and the United States Department of Justice ("USDOJ"). During the pendency of this action, VEON entered into a deferred prosecution agreement ("DPA") with the USDOJ, pursuant to which VEON pleaded guilty to a two-count criminal information charging the company with conspiracy to violate the anti-bribery and books and records provisions of the Foreign Corrupt Practices Act of 1977 ("FCPA").

That DPA describes in detail the facts in the criminal information against VEON. (Amended Complaint, ECF 45, Ex. A (DPA)). In the DPA, VEON admits that between 2005 and

---

[2] The Second Amended Complaint referred to the class period as beginning on December 4, 2010, but Judge Carter's March 2021 Order (ECF 170) clarified that the class period could only begin as early as June 2011.

2012, VEON made or attempted to make millions of dollars in bribes to Gulnara Karimova, the eldest daughter of Uzbekistan's President, in an effort to receive favorable treatment in Uzbekistan. (SAC ¶¶ 36, 39, 45, 105, 119). Between March 12, 2014, and November 3, 2015, several events related to this misconduct caused the price of VEON's American Depository Receipts to decline: (1) on March 12, 2014, VEON made the first of several disclosures concerning investigations into the company by both the SEC and the USDOJ (ECF 170 at 5–6); (2) on August 13, 2015 it was reported that United States authorities had asked their European counterparts to seize approximately $1 billion in assets from various companies, including VEON, that were implicated in a wide-ranging criminal probe of corruption for paying millions of dollars in bribes to Karimova (ECF 170 at 5–6; SAC ¶ 171); and (3) VEON announced it had reserved $900 million for litigation costs. (ECF 170 at 5–6).

### A. Westway is Appointed Lead Plaintiff.

The instant action was first filed on November 4, 2015 by Charles Kux-Kardos against VEON and several individual defendants (Jean-Yves Charlier, Jo Lunder, Alexander Izosimov, Andrew Mark Davies, and Cornelis Hendrik van Dalen, hereinafter "Individual Defendants") who had served either as Chief Executive Officer or Chief Financial Officer of the company. (ECF 1 ¶¶ 16–20). As required by the Private Securities Litigation Reform Act of 1995, Kux-Kardos's counsel issued notice on November 4, 2015, inviting any member of the purported class to move to serve as lead plaintiff. (ECF 18-1 at 2 (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)). Purported class members then had 60 days within which to "move to serve as lead plaintiff." (ECF 18-1 at 2 (citing 15 U.S.C. § 78u–4(a)(3)(A)(i)). Several putative class members responded to the notice and moved to be appointed lead plaintiff, including Plaintiff Westway Alliance Corp.

("Westway") (ECF 8) and then-plaintiff group, Boris Lvov and Richard McColloch[3] ("Lvov and McColloch") (ECF 18). Plaintiffs Sherman Steele, Leonard Karpwich, and Stan Sinitsa ("Named Plaintiffs") did not file motions to be appointed lead plaintiff, or otherwise appear, during the 60 day period, either individually or as a group.

On April 27, 2016, Judge Andrew Carter consolidated this action with another one pending before the Court (No. 15 Civ. 09492), appointed Westway as Lead Plaintiff, and approved Westway's choice of counsel. (ECF 31). On May 6, 2016, Lvov and McColloch filed a motion for reconsideration of the appointment of Westway as Lead Plaintiff, arguing that Westway had not suffered any recoverable losses because it had impermissibly calculated its losses based on stock price declines during intraday trading, rather than prices at closing. (ECF 33, 34). Judge Carter denied their motion (ECF 40), reasoning, *inter alia*, that courts have frequently allowed cases to proceed based on intraday price fluctuations, and questions concerning the proper way to measure price drop and whether causation exists are factual inquiries that should not be determined on the pleadings. (ECF 40 at 5–6).

B.  <u>Lvov Files a Motion to Intervene as Lead Plaintiff.</u>

After consolidating the case and appointing Westway as the Lead Plaintiff, Westway filed an Amended Complaint on behalf of individuals who purchased VEON securities between December 4, 2010 and November 3, 2015. (ECF 45). VEON then moved to dismiss for failure to state a cause of action under Rule 10b-5. (ECF 47, 48). On September 19, 2017, Judge Carter granted the motion in part and denied in part (ECF 63), ruling that the Amended Complaint did

---

[3] The Lvov and McColloch group initially contained a third member, Philip Tohme, who voluntarily withdrew before the Court appointed Westway as Lead Plaintiff. (ECF 31 n.2).

not sufficiently allege loss causation for any individual who both purchased and sold their shares before March 12, 2014, the day of the first partial disclosure. (ECF 63 at 24). On May 17, 2019, VEON then filed a motion for Judgment on the Pleadings, arguing that the September 2017 Order altered the class period to those investors who purchased VEON shares between June 30, 2011 and November 3, 2015, and who held those shares until at least March 12, 2014. (ECF 132; ECF 134). This altered class period would completely exclude Lead Plaintiff Westway, who purchased all of its shares before June 30, 2011. Consequently, on May 21, 2019, Lvov sought permission to file a motion to intervene and substitute himself as Lead Plaintiff, arguing that Westway was no longer a class member and therefore lacked standing to serve as Lead Plaintiff. (ECF 135).

### C. The Parties Pursued Settlement Discussions.

Before Judge Carter could rule on Lvov's request to intervene, Westway and VEON finished briefing on the Motion for Judgment on the Pleadings, and they informed the Court that "the parties [VEON and Westway] are engaging in mediation on November 18, 2019 with Robert Meyer at JAMS." (ECF 141). In response, Lvov asked the Court stay any mediation until Defendant's Motion for Judgment on the Pleadings or Lvov's Motion to Intervene had been decided. (ECF 142).

On November 14, 2019, Westway revealed their efforts to moot Lvov's standing concern by bringing two shareholders who purchased their shares after the June 2011 statement— either as Named Plaintiffs or Class Representatives—into the litigation. (ECF 152 at 5:6–7:14). Lvov argued that Westway should not be able to cure their complete lack of standing by adding additional Named Plaintiffs who did have standing. (ECF 152 at 11:18–15:20). Lvov proposed

5

acting as co-lead Plaintiff as part of the upcoming mediation, a suggestion that Judge Carter denied. (ECF 152 at 21:18-20). Judge Carter allowed Westway's two new shareholders to participate in the mediation, which failed to result in a settlement. (ECF 150).

        D. <u>Plaintiffs Sherman Steele, Leonard Karpwich, and Stan Sinitsa Join the Litigation.</u>

By written Order on March 31, 2020, Judge Carter denied without prejudice VEON's Motion for Judgment on the Pleadings and allowed Westway to amend its complaint. (ECF 155). Westway then filed the Second Amended Complaint ("SAC") on April 14, 2020, naming Sherman Steele, Leonard Karpwich, and Stan Sinitsa as additional plaintiffs. (SAC ¶ 10(a)–(c)).

VEON then moved to dismiss the Second Amended Complaint. (ECF 161). On March 11, 2021 the Court dismissed Westway, reasoning that there was no live controversy between Westway and VEON. (ECF 170 at 12). In light of Westway's dismissal, the Court also reopened the Lead Plaintiff appointment process, and explicitly allowed SKS to move for appointment as Lead Plaintiffs, (ECF 170 at 14), which the group did on April 8, 2021. (ECF 173). In response, Lvov again filed a motion to be appointed Lead Plaintiff. (ECF 177). Defendant VEON weighed in on these competing motions by alerting the Court that it believes SKS would be subject to unique statute of limitations and statute of repose defenses. (ECF 178).

**III.   Analysis**

        A. <u>Applicable Law</u>

The Private Securities Litigation Reform Act ("PSLRA") provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. Under the PSLRA, the Court is to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the

6

interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the one who: (1) "filed the complaint or made a motion in response to a notice," (2) "has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of [Federal Rule of Civil Procedure] Rule 23." 15 U.S.C. §§ 78u–4(a)(3)(B)(iii)(I)(aa)–(cc). *See Caiafa v. Sea Containers Ltd.*, No. 06-CV-2565 (RMB), 2006 WL 2381841, at *1 (S.D.N.Y. Aug. 14, 2006). The presumption of the most adequate plaintiff may only be rebutted by proof that the purportedly most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. §§ 78u-4(a)(3)(B)(iii)(II)(aa), (bb).

While the PSLRA provides clear criteria for the appointment of a Lead Plaintiff at the outset of a securities class action, "[t]he PSLRA is silent on the proper procedure for substituting a new lead plaintiff" when a previously certified one cannot continue the litigation. *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002). Courts have presumed, in the absence of guidance, that the next "most adequate plaintiff" would be a plaintiff who satisfies the above criteria. *Id.* When appointing a new lead plaintiff, the Court may, in its discretion, relax the requirement that a movant for Lead Plaintiff have filed an initial complaint or moved to be lead plaintiff during the initial notice of pendency. *Id*. Judge Carter has re-opened the lead plaintiff appointment process and has limited the potential candidates to: (1) any movant who "either (a) filed a complaint in these consolidated actions, as explicitly contemplated by the PSLRA […] or (b) moved to be appointed Lead Plaintiff in response to the

7

initial notice of pendency"; or (2) the "three Plaintiffs named in the Second Amended complaint," (ECF 170 at 14).

### B. The Presumption in Favor of SKS's Appointment as Lead Plaintiff Has Been Successfully Rebutted by Lvov

SKS and Lvov have both filed timely motions.[4] While SKS has the largest financial interest in the relief sought by the class, SKS (unlike Lvov) does not satisfy the requirements of FRCP Rule 23.[5] Specifically, SKS will be unable to adequately represent the class because SKS's class claims are barred by the statute of limitations. *See Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) (finding that a litigant has raised a "non-speculative risk" that a potential lead plaintiff is subject to a unique defense). Therefore, while Lvov's financial interest is smaller than SKS's, he is the moving plaintiff who can most fairly and adequately protect the interests of the class.

*1. SKS's claims are barred by the statute of limitations*

The alleged violations of the Securities Exchange Act of 1934 are subject to a two-year statute of limitations and a five-year statute of repose. 28 U.S.C. § 1658(b). Moving Plaintiff Lvov has argued that SKS is subject to the unique defense that its claims are barred by the statute of limitations, and that SKS is therefore unable to adequately represent class members

---

[4] There is no dispute that both SKS and Lvov timely filed motions for appointment as Lead Plaintiff. This Court has noted, however, that where some plaintiffs filed in response to the initial notice of pendency and others did not, the plaintiffs who did respond within 60 days "would arguably be entitled to priority over any other potential lead plaintiffs." *In re Initial Public Offering Securities Litigation*, 214 F.R.D. 117, 120 n.5 (S.D.N.Y. 2002). Here, SKS did not file an initial complaint nor did it originally move for appointment as Lead Plaintiff. Lvov originally moved to be lead plaintiff following the initial notice of pendency, and has remained involved and interested in this litigation since 2015. While not determinative, the Court weighs this factor in favor of Lvov.

[5] SKS has suffered a loss of $701,412.00 compared to Lvov's reported loss of $388,985.00. (ECF 177 at 4; 179 at 2). These figures are not disputed. Thus, SKS has suffered the largest financial loss, and collectively, has the largest financial interest in the relief sought.

8

who purchased VEON stocks prior to April 14, 2015. (ECF 178). SKS argues that its claims are not barred because the statute of limitations has been tolled following the commencement of this action on November 4, 2015. (ECF 179 at 3–4).

Equitable tolling under *American Pipe* does not allow the substitution of a lead Plaintiff in an ongoing putative class action following the expiration of the statute of limitations and prior to a decision on class certification. In the class action context, the longstanding equitable tolling rule provides that "the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018). This rule stems from *American Pipe*, in which the court held that "the commencement of the action" tolls the statute of limitations "as to all those who might subsequently participate in the suit as well as for the named plaintiffs." *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 551 (1974).

SKS argues that their claims against VEON have been tolled under this doctrine, (ECF 179 at 3–4, ECF 183 at 2), pointing to a District of New Jersey case, *Schultz v. Midland Credit Mgmt., Inc.*, No. 16-CV-4415 (JLL), 2019 WL 2083302 (D.N.J. May 13, 2019), to support their contention that once a "putative representative is inadequate, a new putative representative can intervene without concern over the timeliness of [its] tolled claims." (ECF 179 at 3). In *Schultz*, the court concluded that under *American Pipe* the individual claims of a newly added plaintiff were tolled by other plaintiffs bringing a class action, and the newly added plaintiff could join the putative class action as a named plaintiff. *Schultz* at *12. The Southern District of New York, however, has recently explicitly rejected that reasoning.

In *Dennis v. JPMorgan Chase & Co.*, 439 F.Supp.3d 256 (S.D.N.Y. 2020), plaintiffs had filed a putative class action alleging violations of, *inter alia*, the Commodity Exchange Act ("CEA") and Racketeer Influenced and Corrupt Organizations Act ("RICO"). During the course of that litigation, Judge Kaplan dismissed the majority of the plaintiffs' claims. Plaintiffs then filed a second amended complaint in which they added a new named plaintiff. By the time the plaintiffs filed the second amended complaint, it was undisputed that the statute of limitations for the CEA claim had passed. The newly named plaintiff nonetheless argued that their individual *and* class claims were timely using the same reasoning articulated by SKS: under *American Pipe*, all of their claims were equitably tolled. Judge Kaplan in *Dennis* agreed in part and disagreed in part,[6] finding that the newly added plaintiff's *individual* claim was tolled under *American Pipe*, but found their claim asserted on behalf of the putative class was time-barred. *Id.* at 264–65. The Court rejected the plaintiff's assertion that there is a distinction between "a new plaintiff filing a *successive* class action" (addressed in *China Agritech*) and "a new plaintiff's attempt to join an *existing* class action via amendment." *Id.* at 265. The Court then dismissed the newly added plaintiff's class capacity claim. *Id.* at 266.

Here, SKS has attempted to join an existing class action via amendment following the expiration of the statute of limitations. SKS's *class* claims, however, are not equitably tolled under *Dennis's* reading of *American Pipe* and are accordingly barred by the PSLRA's statute of

---

[6] SKS quotes *Shultz* to support their argument that their class claims are tolled. *See* ECF 179 at 3 ("*China Agritech* does not prohibit *American Pipe* tolling from applying . . . to allow the addition or substitution of a named plaintiff in an ongoing putative class action following the expiration of the statute of limitations but prior to a decision on class certification.") (quoting *Shultz*, 2019 WL 2083302, at *10). *Dennis*, however, contemplated and rejected this *exact* assertion. *See Dennis v. JPMorgan Chase & Co.*, 439 F. Supp. 3d 256, 266 n.46 (S.D.N.Y. 2020) (quoting *Shultz*, 2019 WL 2083302, at *10) ("Respectfully, **this Court disagrees**.") (emphasis added).

limitations. Thus, SKS is subject to a unique defense which rebuts the presumption that it is the "most adequate plaintiff." This weakness prevents SKS from satisfying the adequacy requirement of FRCP Rule 23.

While equitable tolling in the class action context allows for the filing of *individual* claims after the expiration of the statute of limitations, under *Dennis v. JPMorgan Chase & Co.*, and its interpretation of *American Pipe*, it does not toll class claims, regardless of whether those class claims are brought in subsequent class actions or when a new plaintiff attempts to join an existing class action. Accordingly, I find that SKS's class capacity claims have not been tolled, and that they would be subject to the unique defense that their claims are barred by the PSLRA's two-year statute of limitations. Given the successful rebuttal of the presumption in favor of SKS, and for the reasons that follow, I conclude that Lvov is the most adequate lead plaintiff.

### C. Lvov satisfies the requirements of the PSLRA.

As discussed, Lvov has the second largest financial interest in the relief sought by the class, and his Motion for Appointment as Lead Plaintiff is timely. To fulfill the final requirement for appointment as lead plaintiff under the PSLRA, he must show that he "satisfies the requirements of [Federal Rules of Civil Procedure] Rule 23." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc). "At the lead plaintiff stage of litigation, the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005). The Court concludes that Lvov has made a sufficient preliminary showing of these requirements.

*1. Lvov's Claims are Typical of the Putative Class.*

11

Lvov satisfies the typicality requirement because his claims "arise[] from the same course of events" and make "similar legal arguments to prove the defendant's liability" as other putative class members. *In re Gen. Elec. Sec. Litig.*, No. 09-CV-1951DC, 2009 WL 2259502, at *5 (S.D.N.Y. July 29, 2009) (quoting *In re Bear Stearns*, 2009 WL 50132, at *8 (defining the standard for typicality)). Lvov, like all members of the putative class, purchased VEON stock during the class period and suffered financial loss. *See Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-00864 (SLT) (RER), 2011 WL 3511057, at *4 (E.D.N.Y. May 31, 2011), *R&R adopted*, No. 10-CV-00864 (SLT) (RER), 2011 WL 3511045 (E.D.N.Y. Aug. 10, 2011) (finding typicality where plaintiffs, "like other purported class members," alleged that they purchased Defendants' stock during the Class period at "artificially inflated prices in reliance upon Defendants' misrepresentations, and suffered damages as a result").

Defendant VEON[7] argues that Lvov has adequacy and typicality issues because Lvov purchased his shares after three of the five partially corrective disclosures, but courts have frequently found that the purchase of a stock after a partial disclosure does not bar a plaintiff from satisfying the typicality requirement. (ECF 178 at 2). For example, in *Lawrence v. Phillip Morris Companies*, the Eastern District of New York found that the plaintiff's claims were not atypical even though the plaintiff, unlike other class members, purchased securities after the partial disclosure and drop in stock price. *Lawrence v. Phillip Morris Companies, Inc.*, No. 94-CV-1494 (JG), 1999 WL 51845 (E.D.N.Y. Jan. 9, 1997). In that case, the court found that because the

---

[7] While some courts do not consider arguments by defendants or non-class members seeking to rebut the lead plaintiff presumption, district courts in this circuit have found that defendants in PSLRA cases may make arguments rebutting the lead plaintiff presumption. *Compare In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) with *City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 844 F. Supp. 2d 498 n.3 (S.D.N.Y.), *adhered to*, 875 F. Supp. 2d 359 (S.D.N.Y. 2012).

plaintiff's purchase fell within the class period, his claim was "by definition, typical of those in the class who bought after the 'disclosure.'" *Id. See also In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431, 1999 WL 1021819, at *6 (E.D.N.Y. Apr. 27, 1999) (approving proposed class representative who purchased options in the last two days of the class period and after certain curative disclosures, noting that "a difference in the amount of damage, date, size, or manner of purchase, the type of purchaser, and even the specific document influencing the purchase will not render the claim atypical in most securities actions"); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 346 (S.D.N.Y. 2009) (approving lead plaintiff who made its initial stock purchase after the defendant had made its first partial disclosure, finding that the "purchase of [] shares after the partial disclosures does render [the plaintiff's claims] atypical or subject it to unique defenses").

Here, Lvov made his purchases after some partial disclosures but before others, all within the class period. As Lvov notes, there is nothing unique about his situation. (ECF 182 at 10). The class is defined to include investors who purchased shares during the Class Period, of which Lvov is one. Presumably, other putative class members bought shares at various points during the Class Period, including before and after some disclosures.

The adequacy and typicality requirements of Rule 23 are in place to ensure that a lead plaintiff will not be subject to unique defenses "which threaten to become the focus of the litigation" and will cause absent class members to suffer because the lead plaintiff is "preoccupied with defenses unique to it." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176 (2d Cir. 1990), *abrogated on other grounds* by *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 198 L. Ed. 2d 132 (2017). To ensure typicality, it must be shown

13

that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Elstein v. Net1 UEPS Techs., Inc.*, No. 13-CV-9100 (ER), 2014 WL 3687277, at *7 (S.D.N.Y. July 23, 2014) (internal quotations omitted). Lvov satisfies his requirement because he, like other purported class members, purchased VEON stock during the class period and suffered financial losses. Lvov's claims "need not be identical to the claims of the class in order to satisfy the preliminary showing of typicality." *Id*. His claims arise from the same course of events as other putative class members and will rely on similar legal arguments. By advancing his own interests in the litigation against VEON, Lvov will also be advancing the interest of the entire putative class. The Court therefore finds that Lvov has satisfied the typicality requirement of Rule 23.

2. *Lvov's Interests are Aligned with That of the Putative Class.*

Lvov satisfies the adequacy requirement because "[his] interests are aligned with that of the putative class, and [he] has retained competent and experienced counsel." *In re Gen. Elec. Sec. Litig.*, No. 09-CV-1951DC, 2009 WL 2259502, at *5 (S.D.N.Y. July 29, 2009). *See also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007), *on reconsideration in part sub nom. In re IMAX Sec. Litig.*, No. 06-CV-6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009) ("The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."). Lvov has retained competent and experienced counsel, and his significant financial interest should ensure his vigorous advocacy on behalf of the class. There is no evidence that Lvov's claims are antagonistic to any other putative class member, and his

consistent involvement in the litigation since 2015 is indicative of his interest in this matter and ability to adequately litigate on behalf of himself and the putative class.

        D. <u>Rosen Law is Qualified to Litigate this Action.</u>

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 77z-1(a)(3)(B)(v). Lvov has selected Rosen Law as Lead Counsel. (ECF 177 at 7). As ascertained by Rosen Law's resume and their representation of Mr. Lvov to date, Lvov's chosen counsel is qualified to litigate this action. Accordingly, the Court approves the selection of Rosen Law as Lead Counsel.

## IV. Conclusion

For the foregoing reasons, SKS's motions for appointment as Lead Plaintiff and motion for appointment of Lead Counsel are **DENIED**, and Lvov's motion for appointment as Lead Plaintiff and for appointment of Lead Counsel are **GRANTED**.

The Clerk of the Court is respectfully directed to close ECF 173 and ECF 176.

**SO ORDERED.**

Dated: April 29, 2022                       _s/ Ona T. Wang_
New York, New York                  **Ona T. Wang**
                                                    United States Magistrate Judge