UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE VEON SECURITIES LITIGATION | 15-cv-08672 (ALC)<br><br>**OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Lead Plaintiff Boris Lvov ("Plaintiff" or "Lvov") brings this securities class action against Defendant Veon[1] Ltd., f/k/a VimpelCom Ltd. (referred to herein as "VimpelCom"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder on behalf of himself and a class of all persons who purchased VimpelCom American Depositary Shares ("ADSs") between December 4, 2010, and November 3, 2015, inclusive ("Class Period") and who held such ADSs through at least one corrective disclosure.

Currently pending before the Court is Defendant's motion to dismiss new portions of the Third Amended Complaint ("TAC"). (ECF No. 240). Drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff's newly alleged misstatements and corrective disclosures are time-barred under the statute of repose. For these reasons, Defendants' motion is **GRANTED**.

## BACKGROUND

### I.  Factual Background[2]

---

[1] While VimpelCom has changed its name to VEON, references to allegations against the Defendant here are to VimpelCom, the name at the time of the alleged acts, disclosures and regulatory resolutions.

[2] The following facts are drawn from the Third Amended Complaint ("TAC"), Defendant's Memorandum in Support of its Motion to Dismiss (ECF No. 242, Def. Br.), Plaintiffs' Opposition Brief (ECF No. 243, Pl. Opp.), and documents relied upon therein.

1

The Court assumes the Parties' familiarity with the facts at issue. For a full recitation of the facts underlying this action, the Court refers to the Court's September 19, 2017 Opinion and Order. (ECF No. 63, reported at *In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017) ("September 2017 Order")).

A. **Relevant Procedural History**

Formerly known as VimpelCom, VEON is a Dutch-based multinational telecommunications provider, whose securities are publicly traded on the NASDAQ and Euronext Amsterdam exchanges. In February 2016, VimpelCom entered into a deferred prosecution agreement with the United States Department of Justice ("DOJ"), pursuant to which VimpelCom admitted that the company violated certain provisions of the Foreign Corrupt Practices Act, including its anti-bribery and internal controls provisions in connection with VimpelCom's past operations in Uzbekistan. (TAC ¶¶ 3-10). VimpelCom accepted full responsibility for this misconduct and agreed to be held accountable by its regulators. Among other things, VimpelCom agreed to (i) enhance its internal controls, (ii) cooperate fully with various government agencies, (iii) be subject to an independent monitor, and (iv) pay monetary fines and penalties in excess of $795 million. (TAC ¶¶ 8, 115; TAC Ex. A, Attachment D).

VimpelCom has now completed the terms of the deferred prosecution agreement and concluded the compliance monitorship. On October 31, 2019, the DOJ filed a motion to dismiss its action against VimpelCom, and on February 26, 2020 Judge Edgardo Ramos granted that motion and dismissed the DOJ's action with prejudice. *See* Order granting Fed. R. Crim. P. 48(a) Mot. Dismiss, *United States v. VimpelCom Ltd.*, No. 16-cr-00137, ECF No. 20 (S.D.N.Y. Feb. 26, 2020).

This action was commenced when a different purported class member filed a securities class action complaint on November 4, 2015. (ECF No. 1). Pursuant to the lead plaintiff provisions of the PSLRA, on April 27, 2016 the Court appointed Westway Alliance Corp. as Lead Plaintiff. (ECF No. 31). On December 9, 2016, Westway filed its Amended Complaint, alleging a securities class action on behalf of all purchasers of VimpelCom stock between December 4, 2010 and November 3, 2015. (ECF No. 45). Westway alleged that because VimpelCom had violated the FCPA by bribing foreign government officials in Uzbekistan, the Company also violated United States securities laws—an allegation that, notably, the SEC declined to press. Westway asserted violations of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, alleging among other things that VimpelCom made false or misleading statements concerning the reasons for its financial success in Uzbekistan. (*Id.*).

In January 2017, VimpelCom filed a motion to dismiss Westway's Amended Complaint. (ECF No. 47). On September 19, 2017, the Court granted VimpelCom's motion in part. (September 2017 Order, Law Decl., Ex. C). In relevant part, the Court (i) dismissed claims based on those statements that were "a narrative restatement of accurate financial reporting," (ii) found that VimpelCom's disclosures concerning the relevant government authorities in Uzbekistan responsible for overseeing the telecommunications were "non-actionable, true statements," and (iii) otherwise sustained Westway's claims. (*Id.* at *6-7). The Court held that the earliest actionable alleged misstatement was made in VimpelCom's Form 20-F filed on June 30, 2011. (*Id.* at *6-8).

The Court also held that any individual who both purchased and sold shares prior to March 12, 2014 could not demonstrate loss causation and was excluded from the putative class. (*Id.* at *12). Accordingly, only investors who (i) purchased shares between June 30, 2011 and November 3, 2015 and (ii) held their shares at least until March 12, 2014 were eligible to be members of the prospective class.

Westway filed its Second Amended Complaint on April 14, 2020 (ECF No. 156). VimpelCom moved to dismiss on May 15, 2020, noting that because the first actionable alleged misstatement was made in June 2011, approximately six months after Westway last purchased VimpelCom stock, Westway did not suffer any injury and lacked standing to assert any claims remaining in the lawsuit. (ECF No. 161). The Court agreed, dismissing Westway from this action and reopening the Lead Plaintiff selection process. (ECF No. 170). On April 29, 2022, the Court appointed Mr. Lvov to serve as Lead Plaintiff. (ECF No. 186).

### B. The Third Amended Complaint

On March 1, 2023, Mr. Lvov filed the TAC. (ECF No. 221). Mr. Lvov augmented the pleading as follows:

#### 1. Newly Alleged False Statements

The TAC alleges three new purported false statements (*Id.* ¶¶ 118, 126, 194):

- Mr. Lvov pleads new allegations concerning events in Uzbekistan in early 2012 with respect to a company called MTS, a purported competitor of VimpelCom. Mr. Lvov alleges that MTS had not paid its taxes, causing the Uzbek authorities to seize MTS's assets and bar that company from the Uzbekistan telecommunications market. According to Mr. Lvov, the real reason that MTS's assets were seized was that it had stopped paying bribes to the corrupt Gulnara Karimova, the daughter of Uzbekistan's President, and that VimpelCom allegedly knew this fact. (See TAC at ¶¶ 14, 116-17). Mr. Lvov goes on to allege that "Nevertheless, at the Q2 2012 earnings call taking place on August 15, 2012, [VimpelCom] CEO Lunder stated that '[w]hen it comes to your question on Uzbekistan, of course, we operate in all our market[s] in strict accordance with the local legislation[.]'" (*Id.* ¶ 118). According to Mr. Lvov, "following Lunder's false claim that investors had nothing to fear from Uzbekistan because [VimpelCom] followed the law, the price of VimpelCom's ADSs rose. . . ." (*Id.* ¶ 119).

- Mr. Lvov adds new allegations concerning events in Uzbekistan later in 2012 with respect to another supposed VimpelCom competitor—TeliaSonera. According to Mr. Lvov, a September 2012 investigative report that aired on Swedish television "charged that beginning in 2007, one of VimpelCom competitors, TeliaSonera, may have paid $230 million in bribes to Karimova" and "suggested that TeliaSonera paid the bribes through Takilant," a company that Ms. Karimova owned, thus drawing "a link between Takilant and Karimova." (*Id.* ¶¶ 121-23). Mr. Lvov alleges that TeliaSonera and its CEO denied the charges but hired a law firm to conduct an internal investigation. (*Id.* ¶ 125). Mr. Lvov pleads that according to the minutes of VimpelCom's Annual General Meeting on December 21, 2012, Telenor, a Norwegian telecommunications company that held stock in VimpelCom, "asked VimpelCom to affirm that it followed anti-corruption law, and VimpelCom did so: . . . affirming that it is following international anti-corruption law . . . ." (*Id.* ¶ 126).

- Mr. Lvov alleges a new purported misstatement made in VimpelCom's Form 20-F filed on June 30, 2011. According to Mr. Lvov, VimpelCom falsely stated in that filing that "'[t]he increase in our subscriber base in Uzbekistan was primarily due to expansion of our mobile network coverage and the introduction of attractive tariff offers at competitive prices.'" (*Id.* ¶¶ 194-95).

**2. Newly Alleged Corrective Disclosures**

The TAC alleges six new corrective disclosures. (*Id.* ¶¶ 15, 127-29, 134-37, 145- 47, 153-54, 156-61).

- *January 8, 2013*: Mr. Lvov alleges that on January 8, 2013 TeliaSonera, supposedly a competitor of VimpelCom, denied that it (TeliaSonera) had paid bribes but admitted that "the only Takilant beneficial owner it was able to find was a friend of Karimova." (*Id.* ¶ 15). Mr. Lvov alleges that "the news was concerning to VimpelCom investors because it had been publicly reported that VimpelCom itself had done business with Takilant in Uzbekistan." (*Id.*) Mr. Lvov goes on to allege that on January 8, 2013, the price of VimpelCom's American Depository Shares or ADSs fell 3.7%. (*Id.*; *see also id.* ¶¶ 127-29).

- *March 24, 2014*: Mr. Lvov pleads that "[o]n the news that an investigation was bearing out against TeliaSonera, the price of VimpelCom's ADSs fell 3.6%, damaging investors." (*Id.* ¶ 16; *see also id.* ¶¶ 134-137).

- *December 4, 2014*: Mr. Lvov pleads that "[o]n December 4, 2014, a Norwegian Member of Parliament announced that the Parliament would haul Telenor and VimpelCom in for a public hearing on the allegations that VimpelCom had paid bribes." (*Id.* ¶ 17). Mr. Lvov goes on to plead that the "news revealed the risk that the Norwegian state might force Telenor to sell its VimpelCom shares." He also alleges that the same day, "the price of VimpelCom's ADSs fell 6.3%, damaging investors." (*Id.* ¶ 17; *see also id.* ¶¶ 145-147).

- *August 20, 2015*: According to Mr. Lvov, "[o]n August 14 and 20, respectively, it was revealed that U.S. prosecutors were seeking to freeze $1 billion of Takilant's money and that Swiss prosecutors had seized $828 million and even expanded their probe against Karimova." (*Id.* ¶ 19). Mr. Lvov alleges that "[t]hese disclosures caused the price of VimpelCom's ADSs to fall from $5.56 on August 13 to $4.51 on August 21, damaging investors." (*Id.* ¶ 19; *see also id.* ¶¶ 153-54).

- *October 30 and 31, 2015*: Mr. Lvov alleges that before trading opened on October 30, 2015, a Norwegian Minister announced that she had received new information causing her to lose confidence in the chairman of Telenor's board, whose resignation was announced contemporaneously. Lvov pleads that on October 31, "Bloomberg published a link to an October 30 Norwegian-language article setting out the information which had caused the Minister to lose confidence." (*Id.* ¶ 20). Mr. Lvov alleges that the information suggested that high-level Telenor directors and executives knew of the bribes, which in turn suggested that high-level VimpelCom directors and executives likewise knew. (*Id.*). According to Mr. Lvov, the price of VimpelCom's ADSs fell a combined 4.9% over October 30 and the next trading day, November 2, 2015. (See *Id.* ¶¶ 156-63).

## STANDARD OF REVIEW

I. **Motions to Dismiss under Rule 12(b)(6)**

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Claims should be dismissed when a plaintiff has not pleaded enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

Accordingly, where a plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

In deciding a motion to dismiss a securities action, the Court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" of which a court may take judicial notice.  *Sgalambo v. McKenzie*, 739 F.Supp.2d 453, 470 (S.D.N.Y. 2010) (quoting *ATSI Commc'ns,* 493 F.3d at 98); *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

## II. Section 10(b) and Rule 10b-5

To plead a claim under Section 10(b) and Rule 10b-5, a plaintiff must adequately allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation; (5) economic loss; and (6) loss causation."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267, (2014); *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 n.23 (2d Cir. 2017).

"'The test for whether a statement or omission is materially misleading'. . . is not whether the statement is misleading in and of itself, but 'whether the defendants' representations, taken together and in context, would have misled a reasonable investor.'" *In re Vivendi S.A. Sec. Litig.*, 838 F.3d 223, 250 (2d Cir. 2016) (quoting *Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d Cir. 2004).  This is an objective test that looks to the understanding of an "ordinary investor." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 187 (2015).

Importantly, "literal accuracy is not enough. An issuer must as well desist from misleading investors by saying one thing and holding back another." *Id.* at 192. "However, Section 10(b) and Rule 10b-5(b) "do not create an affirmative duty to disclose any and all material information." *Chapman v. Mueller Water Prod., Inc.*, 466 F. Supp. 3d 382, 397 (S.D.N.Y. 2020) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)). Thus, issuers have a duty of disclosure "only when necessary 'to make . . . statements made, in light of the circumstances under which they were made, not misleading.'" *Matrixx*, 563 U.S. at 44 (quoting 17 C.F.R. 240.10b-5(b)).

## III. Fed. R. Civ. P. 9(b) and the PSLRA

When a plaintiff has alleged securities fraud claims, the complaint is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud or mistake." To satisfy the particularity requirement, a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015).

The PSLRA holds private securities plaintiffs to an even more stringent pleading standard. Under the PSLRA, a plaintiff must "(1) specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading; and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (internal citation and quotation marks omitted) (quoting 15 U.S.C. § 78u-4(b)).

## DISCUSSION

### I. Plaintiff's Newly Pleaded False Statements Are Time-Barred as a Matter of Law

Plaintiff's newly alleged false statements are time-barred as a matter of law. Title 28, United States Code, Section 1658(b)(2) provides that "a claim of fraud . . . concerning the securities laws . . . may be brought not later than . . . 5 years after such violation." Section 1658(b)(2) is an "unqualified bar" that "giv[es] defendants total repose" once the five-year window closes. *Merck & Co. v. Reynolds*, 559 U.S. 633, 650, 130 S. Ct. 1784, 176 L. Ed. 2d 582 (2010); *see also SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173, 176 (2d Cir. 2016) (identifying Section 1658(b)(2) as a statute of repose).

"Significantly, **the clock begins running from the date of each alleged misstatement**, *see, e.g.*, *Sjunde AP-Fonden v. GE ("Sjunde I")*, 417 F. Supp. 3d 379, 391 (S.D.N.Y. 2019); *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 378 (S.D.N.Y. 2013), **and is not subject to equitable tolling**, *see SRM Glob. Master Fund Ltd. P'ship*, 829 F.3d at 177 (emphasis added). And of particular relevance here, claims based on previously unalleged misstatements cannot 'relate back' to the filing of an earlier complaint under Rule 15(c) of the Federal Rules of Civil Procedure if the newly filed claims would otherwise be barred by the statute of repose. *See, e.g.*, *Sjunde I*, 417 F. Supp. 3d at 391-92; *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d at 379-80." *Amorosa v. GE*, 2023 U.S. Dist. LEXIS 98688, *2-3 (S.D.N.Y., June 6, 2023).

In this case, the initial complaint was filed on November 4, 2015, *see* ECF No. 1 ("Initial Compl."), the first amended complaint on December 9, 2016, *see* ECF No. 45 ("FAC"), the second amended complaint on April 14, 2020, *see* ECF No. 156 ("SAC"), and the third amended complaint on March 1, 2023 ("TAC")[3]. The Court must dismiss claims based on alleged misstatements made prior to March 1, 2018 that are not alleged in either of the first three complaints. That applies to claims based on the newly alleged misstatements.

As this Court has already explained,

> [s]ecurities fraud claims arise from, among other things, *specific* "statements of a material fact" and *specific* material omissions, 17 C.F.R. § 240.10b-5(b), 15 U.S.C. § 78u-4(b)(1), not from the documents in which those statements are contained. The statute of repose for such claims begins running from the time that each allegedly fraudulent statement or omission is made. Accordingly, a timely raised claim based on misleading statements made [five years before the filing of the operative complaint] does not somehow preserve other, as-yet-unpleaded claims based on different misleading statements, even if the two sets of misleading statements were made at the same time and in the same document.

*Sjunde I*, 417 F. Supp. 3d at 392 (cleaned up); *see also, e.g.*, *Chien v. Skystar Bio Pharm. Co.*, 566 F. Supp. 2d 108, 115 (D. Conn. 2008) (holding that claims were not well pleaded under Rule 9(b) and the PSLRA where the complaint "ma[de] repeated allegations that [the defendant company's SEC] filings were inaccurate and false, without specifying which statements [in those filings the plaintiff] has in mind" (cleaned up)), *aff'd*, 378 F. App'x 109 (2d Cir. 2010); *In re Open Joint Stock Co. "Vimpel-Commc'ns" Sec. Litig.*, No. 04-CV-9742 (NRB), 2006 U.S. Dist. LEXIS 10256, 2006 WL 647981, at *5 (S.D.N.Y. March 14, 2006) (similar, but where the complaint block-quoted large excerpts from the defendant company's SEC filings and press releases and "fail[ed] to identify which statements in those documents were misleading"). Plaintiff's argument that the statute of repose is irrelevant because he is not filing a new action nor alleging a new violation is patently wrong under Second Circuit precedent. *See*

---

[3] The TAC is technically Mr. Lvov's first amended complaint as he was named Lead Plaintiff on April 29, 2022 (ECF No. 186).

12

*In re Barclays Bank PLC Sec. Litig.*, 2015 U.S. Dist. LEXIS 156676, *13 (S.D.N.Y., Nov. 19, 2015) (finding lead plaintiff's claims untimely and noting "even if the timely claims are still pending before the court, the Rules Enabling Act bars relation back of new claims after the repose period.") (internal citation omitted); *see also In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 23 F. Supp. 3d 203, 209 (S.D.N.Y. 2014) (dismissing new class action's plaintiff's claims as time-barred by the statute of repose under Second Circuit precedent).

In short, "there is no principled basis" to accept Plaintiff's attempts to circumvent the statute of repose as to most of his newly alleged claims. *Sjunde I*, 417 F. Supp. 3d at 392. Accordingly, his claims based on the above statements and corrective disclosures fail as a matter of law and are dismissed with prejudice. *See Id.* (dismissing with prejudice similar claims barred by the statute of repose); *see Amorosa*, 2023 U.S. Dist. LEXIS 98688, *4-5.

## I. Plaintiff's Newly Alleged Corrective Disclosures May Proceed

This Circuit has yet to determine whether newly added corrective disclosures may be pleaded in violation of the statute of repose. Plaintiff asserts that these newly alleged corrective disclosures do not bring a new action nor raise a new violation of Section 10(b), but rather support "the causal connection that the plaintiff has in mind" between the violation and the plaintiff's economic loss. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). The Court finds that it is at least plausible that the new corporate disclosures support Plaintiff's allegations of loss causation. Taken together, these new disclosures reveal specific, concrete facts about VimpelCom that contributed to its declining stock price.

Accordingly, Defendant's motion to dismiss the newly alleged disclosures is denied.

**CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss the newly pleaded false statements (TAC ¶¶ 118, 126, 194) is **GRANTED** with prejudice. Defendant's motion to dismiss thew newly pleaded corrective disclosures is **DENIED** without prejudice (*id.* ¶¶ 15, 127-29, 134-37, 145- 47, 153-54, 156-61). The Parties are directed to file supplemental briefing on the newly alleged corrective disclosures in light of the Court's dismissal of the new misstatements. Plaintiff's letter brief is due on October 7, 2024. Defendant's reply is due October 14, 2024.

**Dated:  September 29, 2024**
   **New York, New York**

ANDREW L. CARTER, JR.
United States District Judge