UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re VEON Ltd. Securities Litigation | Case No.: 1:15-cv-08672-ALC-OTW |

**DECLARATION OF JONATHAN HORNE IN SUPPORT OF LEAD PLAINTIFF'S MOTIONS FOR (I) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (II) FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO LEAD PLAINTIFF**

I, Jonathan Horne, declare:

1. I am a Partner at The Rosen Law Firm, P.A. ("Law"), Lead Counsel in the above-captioned action (the "Action"). Rosen has represented Lead Plaintiff Boris Lvov ("Lead Plaintiff" or "Mr. Lvov") throughout this litigation. I make this declaration based on my personal knowledge and, if called as a witness, I could and would competently testify to the matters stated herein. I make this declaration solely to provide support for assertions in the Memoranda of Law in Support of the Motions for Final Approval and for an Award of Fees ("Briefs" and "Motions"), filed herewith, and refer the Court to the Briefs for a fuller account of the facts and procedural history of this case.

**Complaint**

2. Upon appointment, Lead Counsel reviewed news about VEON in greater detail. By painting a fuller picture of what investors would have known about VEON and learned over the course of the four-year class period, Lead Counsel identified additional corrective disclosures.

**Evidentiary Problems**

3. Lead Counsel independently identified Executive 1 before the February 2025 mediation.

4. Executive 1 and Executive 2 both reside in Russia.

5. A July 7, 2025 news report states that Gulnara Karimova is currently located in the Zangiota correctional colony.[1] Plaintiff is not aware of any source stating that Ms. Karimova has been released.

6. Plaintiff believes that key witnesses are located in Russia, Norway, Sweden, the Netherlands, and Uzbekistan. These witnesses are no longer VEON employees.

7. In Lead Counsel's experience, even when a state does not require payment of attorneys' fees by treaty, the enforcing courts will often impose the condition themselves.

**Scienter**

8. None of the individual defendants in this action have been prosecuted.

**Discovery and Settlement**

9. The Parties agreed to hold a mediation shortly after the Court entered the September 2024 Motion to Dismiss Order. The Parties selected a mediator—David Murphy—and a date in February 2025. To prepare for the mediation, the Parties first exchanged expert damages report, and then updated damages report after the Court's January 2025 Order. Mr. Lvov shared VEON's expert report with his own expert, who provided analysis. Informed by the experts' reports and analyses, the Parties then served opening and reply mediation briefs. Though the mediation was productive, the Parties did not reach a settlement.

10. The Parties continued discussions over the next 7 months even as they conducted discovery. After several exchanges of offers and counteroffers, on September 8, 2025, Mr. Murphy made a double-blind proposal to settle claims in this action for $19.97 million. Both Parties

---

[1] Umida Niyazova, *Gulnara Karimova—Victim of Her Own Father's "Justice" System*, July 7, 2025, Uzbek Forum for Human Rights, available at https://www.uzbekforum.org/gulnara-karimova-victim-of-her-own-fathers-justice-system/ .

accepted, though Mr. Lvov reserved the right to obtain further discovery from VEON and terminate the Settlement within sixty days in his sole discretion based on his analysis thereof. Mr. Lvov targeted his analysis of the documents Defendant produced to whether Executive 1's scienter could be imputed to VEON. Mr. Lvov attempted to determine Executive 1's responsibilities and involvement in the making of actionable statements. Finding no documents that showed he would clearly prevail in imputing Executive 1's scienter to VEON, on November 24, 2025, Mr. Lvov agreed to consummate the Settlement.

11. The parties served 68 requests for production, 8 interrogatories, and 4 requests for admission. Mr. Lvov reviewed more than 84,000 pages of documents

**Damages**

12. Plaintiff's expert provides the following data:

a. For all the corrective disclosures remaining after the Court's January 10, 2025 opinion, Plaintiff's expert estimates damages of $149 million

b. For all the corrective disclosures remaining after the Court's January 10, 2025 opinion, except October 30, 2015, Plaintiff's expert estimates damages of $134.5 million;

c. For the corrective disclosures identified in Westway's complaint, Plaintiff's expert estimates damages of $75.5 million; and

d. The March 24, 2014 and December 8, 2014 corrective disclosures were statistically significant at the 90% level but not the 95% level. The October 30, 2025 corrective disclosure was nowhere near statistical significance.

13. Defendant's expert estimates damages for the November 3, 2025, corrective disclosure of $34.9 million. Plaintiff's expert estimates damages of $37.2 million for that same disclosure.

14. Russia's invasion of Ukraine began on February 27, 2014. Russia annexed Crimea on March 18, and Ukraine ordered its troops to withdraw on March 24. The global community promised that sanctions against Russia were forthcoming. On March 24, the G-8 formally terminated Russia's membership, a Russian government report predicted massive capital outflows from the country, and Moody's reported that it was reviewing Russian bonds for a downgrade. This bad news for Russia, unrelated to the alleged fraud, was also bad news for VEON because at the time it earned almost half its revenues in that country. Lead Plaintiff would have to show that the March 24 drop did not wholly result from the world's announced response to Russian aggression and then disaggregate the geopolitical and fraud-related impacts on VEON's stock price.

15. The December 4, 2014, drop coincided with unrelated news. Just days earlier, the Russian government made a downward revision to its prediction of economic activity. VEON's ADRs were one of many U.S. traded securities with exposure to Russia that fell on December 4. The ruble, too, fell substantially. Lead Plaintiff would have to disaggregate the impact of this broader non-fraud news.

**Fees and Expenses**

16. The chart below summarizes the hours, rate, and lodestar of each Rosen attorney who worked on this matter. The total number of hours spent on the litigation of the Action by my firm through April 10, 2026 is 3,220.46. Rosen's total lodestar amount for attorney time based on the firm's current rates is $2,250,954.06.

17. A breakdown of the lodestar is set forth in the chart below:

| TOTAL HOURS AND LODESTAR | | | |
|---|---|---|---|
| **Name and Position** | **Total Hours** | **Hourly Rate** | **Total Lodestar** |
| Phillip Kim (P) | 73.75 | $1,403 | $103,471.25 |
| Jacob Goldberg (P) | 0.6 | $1,512 | $907.20 |
| Jonathan Horne (P) | 428.6 | $1,273 | $545,607.80 |
| Jonathan Stern (P) | 7.9 | $1,403 | $11,083.70 |
| Yu Shi (P) | 0.7 | $1,273 | $891.10 |
| Brian Alexander (P) | 5.5 | $1,403 | $7,716.50 |
| Erica Stone (P) | 19.9 | $1,273 | $25,332.70 |
| Josh Baker (P) | 0.1 | $1,120 | $112.00 |
| Gonen Haklay (C) | 3 | $1,403 | $4,209.00 |
| Robin Howald (C) | 2.8 | $1,512 | $4,233.60 |
| Leah Heifetz-Li (C) | 25.7 | $1,273 | $32,716.10 |
| Michael Cohen (C) | 9 | $1,120 | $10,080.00 |
| Brent LaPointe (C) | 14.55 | $1,120 | $16,296.00 |
| Ryan Hedrick (A) | 69.15 | $826 | $57,117.90 |
| Scott Kim (A) | 35.2 | $826 | $29,075.20 |
| Christie Buzzetti (A) | 0.84 | $717 | $602.28 |
| Henry Bloxenheim (A) | 5.29 | $717 | $3,792.93 |
| Yitzchok Fishbach (A) | 84.4 | $717 | $60,514.80 |
| Julia Shimizu (PL) | 2.83 | $300 | $849.00 |
| Zachary Stanco (PL) | 2.05 | $300 | $615.00 |
| Igor Gadlin (SA) | 628 | $550 | $345,400.00 |
| Irina Barton (SA) | 1,005.1 | $550 | $552,805.00 |
| Roman Yushuva (SA) | 795.5 | $550 | $437,525.00 |
| **Total:** | **3,220.46** | | **$2,250,954.06** |

(P) – Partner; (C) – Counsel; (A) – Associate; (SA) – Staff Attorney; (PL) – Paralegal

| Firm | Hours | Lodestar |
|---|---|---|
| *Gainey McKenna Egleston* | *2,188.45* | *$2,084,197.25* |
| The Rosen Law Firm, P.A. | 3,220.46 | $2,250,954.06 |
| **Total** | **5,408.91** | **$4,335,151.31** |
| Requested Fee | | $6,656,666.67 |
| Multiplier | | 1.54 |

18. My firm incurred a total of $96,272.78 in unreimbursed expenses in connection with the prosecution of this litigation. They are broken down as follows:

| DISBURSEMENT | TOTAL |
|---|---|
| Photocopying/Reproduction (In-House) | $17.65 |
| Discovery Database Hosting Fees | $3,416.42 |
| Legal Research | $5,643.18 |
| Postage/Messenger/Federal Express | $96.26 |
| Press Releases and Notice to Class Members Fees | $1,320.00 |
| Court Filing, Courtesy Copy, and Court Messenger Fees | $45.00 |
| Document Translation and Interpreter Fees | $754.95 |
| Airfare/Travel/Parking/Meals/Miscellaneous | $151.32 |
| Mediation Fees | $52,660.00 |
| Expert Fees | $32,168.00 |
| *Gainey McKenna Egleston expenses* | *$67,020.97*[2] |
| **Total** | **$163,293.80** |

19. The expenses incurred are reflected in the books and records contemporaneously prepared by my firm. These books and records are prepared from expense vouchers, invoices, and other billing records, and are an accurate record of the expenses incurred. I have reviewed the expenses for which reimbursement is sought and confirmed that they were reasonably necessary for the effective and efficient prosecution and resolution of the litigation and reasonable in amount. The expenses are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

20. My firm's compensation for services rendered and out-of-pocket expenses incurred in this case was and is entirely contingent on the success of the prosecution of the Action, and on the Court's approval of the fee and expense application. None of the attorneys' fees and expenses submitted to this Court has been paid from any source or has been the subject of any prior request or prior award in any litigation or other proceeding.

21. My firm has not received any objections or requests for exclusion.

[2] Includes $7,361.17 in mediation fees and $37,217.91 in expert fees.

22. Attached hereto are true and correct copies of:

Exhibit 1: Rosen Law Firm Resume

Exhibit 2: Laarni Bulan & Eric Tam, *Securities Class Action Settlements: 2025 Review & Analysis* (Cornerstone Research)

Exhibit 3: Pages of the 2023 Annual Report on Form 20-F of VEON Ltd.

Exhibit 4: Pages of the 2025 Annual Report on Form 20-F of VEON Ltd.

Exhibit 5: Edward Flores et al, *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review* (National Economic Research Associates, Inc.)

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of April 2026.

*/s/ Jonathan Horne*